1  KALCHEIM LAW GROUP, P.C.
   Mitch Kalcheim (SBN 175846)
2  Amber Healy (SBN 232730)
   9300 Wilshire Blvd., Suite 508
3  Beverly Hills, California 90212
   Telephone:  (310) 461-1210
4  Facsimile:   (310) 461-1212

5  *Attorneys for Plaintiff*

6

7                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA

8

9  JEFF KANDEL, individually and on        No. CV08-01040 DSF (RCx)
   behalf of all others similarly situated,
10
                                           AMENDED CLASS ACTION
11            Plaintiff,                    COMPLAINT FOR:

12       v.                                1.  Violation of Cal. Civ. Code
                                               § 1750 et seq.
13  BROTHER INTERNATIONAL CORP.            2.  Violation of Cal. Bus. & Prof.
    and BROTHER INDUSTRIES LTD.                Code § 17200 et seq.
14                                         3.  Violation of Cal. Bus. & Prof.
                                               Code § 17500 et seq.
15            Defendants.                   4.  Trespass to Chattels
                                           5.  Money Had and Received
16

17        Plaintiff Jeff Kandel, on behalf of himself and all others similarly situated,

18  alleges the following on information and belief, except as to allegations concerning

19  Plaintiff or his counsel, which allegations are made upon Plaintiff's personal

20  knowledge.

21                           **SUMMARY OF CLAIMS**

22       1.    Plaintiff brings this class action to obtain corrective disclosures,

23  restitution and other equitable relief and statutory and compensatory damages against

24  defendant Brother International Corporation ("Brother-US").  Plaintiff asserts claims

25  for: (a) violation of the California Consumers Legal Remedies Act (the "CLRA"),

26  Cal. Civ. Code § 1750 *et seq.*; (b) violation of California's unfair competition law,

27  Cal. Bus. & Prof. Code § 17200 *et seq.*; (c) violation of California's misleading

28

AMENDED CLASS ACTION
COMPLAINT                              1

1  advertising law, Cal. Bus. & Prof. Code § 17500 *et seq.*; (d) trespass to chattels; and

2  (e) money had and received.

3      2.    Plaintiff seeks to represent a class (the "Class") consisting of: (a) all

4  California residents who purchased laser printers, fax machines or multi-function

5  machines (collectively, the "Brother Devices") or toner cartridges (the "Brother

6  Cartridges") manufactured by Brother Industries, Ltd. ("Brother-Japan") and

7  distributed by Brother-US during the period from December 18, 2003 through the

8  date a class is certified in this action (the "Class Period"); and (b) all persons who

9  purchased Brother Devices or Brother Cartridges (collectively, the "Brother

10  Products") from businesses located within the State of California during the Class

11  Period.  Brother-US and Brother-Japan (collectively, the "Brother Entities") and their

12  corporate parents, subsidiaries, officers and directors are excluded from the Class.

13      3.    Plaintiff, like many California consumers, purchased a Brother Device

14  (specifically, a Brother Fax-2800) manufactured by Brother-Japan and distributed in

15  the United States by its subsidiary, Brother-US, because he believed that the Fax-

16  2800 offered the most economical option for his printing and faxing needs.

17      4.    As is true of most Class members, Plaintiff based his purchase decision

18  primarily upon the price of his Fax-2800 and the features that Brother Device offered,

19  rather than the ongoing costs of operating the device.

20      5.    The Brother Entities recognized that most consumers' purchase

21  decisions with respect to Brother Devices did not focus primarily upon the operating

22  costs associated with the devices.  As a result, the Brother Entities' marketing

23  strategy emphasized selling Brother Devices at comparatively low margins in order to

24  create a captive audience of consumers for Brother Cartridges, "drum units" and other

25  replacement supplies for Brother Devices that the Brother Entities sold at steep

26  markups.

27      6.    By implementing that marketing plan, the Brother Entities produced

28  substantial profits for themselves throughout the Class Period through their lucrative

AMENDED CLASS ACTION
COMPLAINT                       2

1    sales of the replacement supplies or "consumables."

2    7.    Unsatisfied with those substantial profits, however, the Brother Entities

3 embarked on an illicit conspiracy designed to create artificially high demand for, and

4 sales of, the high-margin consumables. The most critical element of that plan

5 consisted of duping consumers into purchasing new Brother Cartridges long before

6 the consumers utilized all of the high-priced toner contained in those cartridges.

7    8.    In part, the Brother Entities perpetrated their unlawful scheme by

8 causing Brother Devices to indicate prematurely on their "LED" or "LCD" displays

9 that their Brother Cartridges' toner supply was "low."

10    9.    Even more importantly, the Brother Entities misled and gouged

11 consumers by causing Brother Devices to refuse to print *at all* and to indicate on their

12 displays that their Brother Cartridges were "empty" or had reached their "life end"

13 after the cartridges had produced a pre-set number of printed pages. The Brother

14 Devices delivered those false signals to consumers without regard for the actual

15 amount of toner remaining in the Brother Cartridges.

16    10.    This illicit scheme has proven a financial bonanza for the Brother

17 Entities. As a direct result of the Brother Entities' lies and omissions, Class members

18 have shelled out inflated prices for Brother Devices. Moreover, in many cases, Class

19 members have been forced to purchase new Brother Cartridges although the

20 consumers' supposedly "empty" Brother Cartridges contained 25% or more of their

21 original toner supply.

22    11.    In total, the Brother Entities' conspiratorial misconduct and repeated

23 misrepresentations have unjustly enriched the Brother Entities by millions of dollars

24 at the direct expense of unsuspecting Class members.

25    12.    These abuses constitute precisely the type of inequitable misconduct that

26 the CLRA, the UCL and the California common law are designed to prevent and

27 punish. Accordingly, Plaintiff and the members of the Class are entitled to equitable

28 and legal relief designed: (a) to prevent Brother-US from misleading consumers and

AMENDED CLASS ACTION
COMPLAINT            3

1   profiting from the illicit conspiracy and unlawful conduct that Plaintiff alleges; (b) to

2   require Brother-US to disgorge the excess revenue that the Brother Entities have

3   obtained from Class members through their misconduct; and (c) to compensate

4   Plaintiff and the members of the Class for the injuries they have suffered as a result of

5   the Brother Entities' unlawful conduct.

6                          **JURISDICTION AND VENUE**

7          13.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23

8   and Cal. Civ. Code § 1781.

9          14.    Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d) because:

10   (a) Plaintiff resides in California; (b) Brother-US is Delaware corporation with its

11   principal offices in New Jersey; (c) the members of the Class are residents of

12   California and many other states; and (d) Plaintiff seeks relief that significantly

13   exceeds $5 million.

14          15.    Venue is proper in this District under 28 U.S.C. § 1391(a) because a

15   substantial portion of the events or omissions giving rise to Plaintiff's claims

16   occurred in this District.

17                              **THE PARTIES**

18          16.    Plaintiff Kandel is a resident of Los Angeles County.  During the Class

19   Period, Kandel purchased multiple replacement Brother Cartridges for his Brother

20   Fax-2800.  Kandel purchased those Brother Cartridges in Los Angeles County.

21   Kandel has used the Fax-2800 for both personal and business purposes.

22          17.    Brother-US is a domestic corporation with its principal place of business

23   located in Bridgewater, New Jersey.  Brother-US is a distributor of consumer

24   electronics, including Brother Devices and Brother Cartridges.  On its website,

25   Brother-US describes itself as one of the premier providers of products for the home,

26   home office and office.  The company further notes that it markets many industrial

27   products, home appliances, and business products manufactured by its parent

28   company, Brother-Japan.

AMENDED CLASS ACTION
COMPLAINT                                4

**BROTHER-JAPAN**

18.     Brother-Japan, a Japanese corporation with its principal offices in Japan, is Brother-US's parent company.  Throughout the Class Period, the Brother Entities engaged in a conspiracy designed to enhance their profits at the expense of Class members.  Brother-Japan controls Brother-US through Brother-Japan's stock ownership and through Brother-Japan's designation of Brother-US's senior management.  Brother-Japan appoints all of the members of Brother-US's Board of Directors and, through the directors, all of the members of Brother-US's senior management team.  Despite the control that Brother-Japan exerts over Brother-US, the two entities do claim that they maintain separate corporate existences.

19.     Throughout the Class Period, Brother-Japan distributed its products to American consumers, including the members of the Class, through Brother-US.  Brother-Japan intentionally placed its products, including the Brother Devices and Brother Cartridges, into the stream of commerce with the specific intention of selling those products to the residents of California and to the residents of other states through Brother retailers located in California.

**CLASS ACTION ALLEGATIONS**

20.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) and Cal. Civ. Code § 1781 on behalf of the Class, as defined in paragraph 2.

21.     The Class satisfies all of the requirements for class certification pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) and Cal. Civ. Code § 1781.

22.     **Numerosity:** The Class is so numerous that joinder of all Class members is impracticable.  While Plaintiff does not currently know the exact number of Class members, Plaintiff can identify Class members through the records that Brother-US and other companies maintain (including warranty registration records).  Based upon the Brother Entities' significant share of the California market for laser printers, faxes and multi-function machines, however, Plaintiff believes that there are thousands of

AMENDED CLASS ACTION
COMPLAINT                          5

1  Class members.

2       23.    **Commonality and Predominance:** Numerous questions of law and fact

3  common to the claims possessed by the members of the Class predominate over any

4  individual questions presented by their claims.  By proving his claims, Plaintiff will

5  prove essentially all of the elements of the claims that he is pursuing on behalf of the

6  other members of the Class.  The Court can adjudicate any individual issues presented

7  by the claims Class members possess by utilizing case management techniques

8  commonly employed in consumer class actions. The questions of law and fact

9  common to all Class members' claims that predominate over any individual issues

10  those claims present include:

11       1.    whether Brother-US engaged in the misleading, deceptive,

12  unlawful, and fraudulent course of conduct about which Plaintiff complains;

13       2.    whether the Brother Entities pursued that unlawful conduct

14  pursuant to a conspiracy in which they agreed to participate;

15       3.    whether it is misleading, deceptive, unlawful and fraudulent for

16  the Brother Entities to cause Brother Devices to advise consumers that Brother

17  Cartridges are "empty" or have reached their "life end" when significant toner

18  remains in those cartridges;

19       4.    whether the Brother Entities are obligated to disclose to

20  consumers that Brother Devices will not print even though sufficient toner remains in

21  their Brother Cartridges to produce excellent images;

22       5.    whether it is misleading, deceptive, unlawful and fraudulent for

23  the Brother Entities to advise consumers that Brother Devices can accurately monitor

24  the amount of toner left in Brother Cartridges although those devices actually possess

25  no capability to perform that function;

26       6.    whether Plaintiff and the members of the Class are entitled to

27  equitable relief requiring Brother-US to make accurate disclosures to Class members

28  concerning the ability of Brother Devices to measure the amount of toner remaining

AMENDED CLASS ACTION
COMPLAINT          6

1   in Brother Cartridges;

2       7.   whether Plaintiff and the members of the Class are entitled to

3   restitution by means of direct reimbursement or a fluid recovery in the amount of the

4   excess revenue that the Brother Entities obtained from Class members by means of

5   the Brother Entities' acts of unfair competition;

6       8.   whether Plaintiff and the members of the Class are entitled to an

7   award of damages as a result of their overpayment for Brother Devices and Brother

8   Cartridges that did not possess the characteristics advertised by the Brother-US; and

9       9.   the appropriate means for determining the amount of restitution

10   and damages to which the members of the Class are entitled as a result of the Brother

11   Entities' misleading, deceptive, unlawful and fraudulent conduct.

12       24.   **Typicality:**  Plaintiff's claims are typical of the claims that other Class

13   members possess because all Class members purchased Brother Devices and/or

14   Brother Cartridges during the Class Period and suffered injuries as a result of

15   Brother-US's unlawful conduct.  In particular, Brother-US and its co-conspirator,

16   Brother-Japan, made the misleading disclosures specified herein to all Class

17   members.  Brother-US has given no indication that it intends to alter or correct those

18   misleading disclosures in any manner.  In addition, the Brother Entities were unjustly

19   enriched at the direct expense of Class members when Brother Devices falsely

20   signaled that they were empty and refused to print additional pages.  As a result of the

21   Brother Entities' misconduct, Class members had to purchase additional Brother

22   Cartridges that they did not need and had to discard Brother Cartridges that contained

23   sufficient toner to produce excellent images.  Class members also paid excessive

24   prices for their Brother Devices and Brother Cartridges as a result of the Brother

25   Entities' failure to disclose their misleading practice of programming Brother Devices

26   to indicate that Brother Cartridges' toner supply was "low" or "empty" when, in fact,

27   those Brother Cartridges contain more than sufficient toner to produce excellent

28   quality images.  Plaintiff's claims are also typical of those of the other members of the

AMENDED CLASS ACTION
COMPLAINT                7

Class because all Class members' claims are based upon the same legal theories and require the same factual proof as the claims Plaintiff asserts on his own behalf.

25.   **Adequacy:**  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel competent and experienced in class action and consumer litigation, and Plaintiff possesses no interests antagonistic to or in conflict with those of the other members of the Class.  Plaintiff will prosecute this action diligently because he has suffered the same losses that other Class members have sustained.

26.   **Superiority:**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because there are thousands of Class members and those persons are geographically dispersed, joinder of all Class members is impracticable.  Moreover, individual Class members are foreclosed from prosecuting separate claims because the costs of pursuing this litigation on an individual basis exceed the benefits that any Class member could expect to obtain by means of the equitable or legal relief that Plaintiff seeks.  Thus, all parties share a common interest in litigating all Class members' claims in a single forum.  The parties will not encounter any unusual difficulties in the management of this action on a class-wide basis.

27.   This case also satisfies all of the criteria for class certification pursuant to Fed. R. Civ. P. 23(b)(2).

28.   In particular, Brother-US has acted and refrained from acting in a manner that applies generally to the Class.  Brother-US made the misleading disclosures specified herein to all Class members and has refrained from disclosing to all Class members that the Brother Entities designed Brother Devices to cease printing before their Brother Cartridges exhausted their supply of toner.  In addition, the Brother Entities have been unjustly enriched at the direct expense of the members of the Class as a result of the unlawful, unfair and fraudulent conduct that Plaintiff alleges.  As a result, final injunctive relief or corresponding declaratory relief is

AMENDED CLASS ACTION
COMPLAINT                                8

appropriate with respect to the Class as a whole.

## THE COMMON FACTS AND CIRCUMSTANCES THAT ESTABLISH THE CLAIMS OF PLAINTIFF AND ALL CLASS MEMBERS

**A.    The Brother Devices**

29.    Class Members purchased three basic types of Brother Devices – laser printers, laser fax machines and laser multi-function machines.  The multi-function machines combine the capabilities of multiple types of office equipment.  Most frequently, Brother multi-function machines offer some combination of the functionality of a printer, fax machine, scanner and copy machine.

30.    The Brother Entities sold multiple models of each of the three types of Brother Devices during the Class Period.  Those models differed from one another in manners that are immaterial to the issues presented by this litigation.

31.    For example, some Brother Devices print faster than others.  Some Brother Devices support "network" printing from multiple computers while others do not.  In addition, some Brother Devices print in multiple colors, while other devices print only in shades of black.

32.    While each model of Brother Device sold by the Brother Entities during the Class Period offered consumers somewhat different functionality, all of the models utilized essentially the same laser printing technology.

33.    At the start of the printing process, a laser beam inside Brother Devices projects an image of the page to be printed onto an electrically charged rotating "drum" coated with a substance known as selenium.  Photoconductivity then removes the charge from the areas of the drum exposed to light.  Toner particles, which are essentially dry ink contained within the Brother Cartridges, are then electrostatically picked up by the drum's charged areas.  The drum then prints the image onto paper by direct contact and heat, which fuses the ink to the paper.

34.    Consumers must periodically replace both the drum unit and Brother Cartridges that Brother Devices utilize in the laser printing process.  Brother

AMENDED CLASS ACTION
COMPLAINT                                     9

1  Cartridges require more frequent replacement than drum units, purportedly as printing
2  consumes the Brother Cartridges' toner supply.

3       35.    Critically, Brother Cartridges can dispense toner (and print images) until
4  the cartridges have consumed effectively all of their toner.

5       36.    The Brother Entities, however, have designed and programmed Brother
6  Devices to cease printing long before their Brother Cartridges have emptied their
7  toner supply.  After printing a pre-determined number of pages, and irrespective of
8  the amount of toner remaining in their Brother Cartridges, Brother Devices signal that
9  their toner cartridges are "low."

10      37.    Shortly thereafter, and again without regard for the actual amount of
11  toner remaining in the Brother Cartridges, Brother Devices signal that their toner
12  cartridges are "empty" or have reached their "life end."  At that point, the Brother
13  Devices refuse to print until consumers replace their Brother Cartridges, even though
14  the cartridges are perfectly capable of printing excellent images.

15      38.    By employing these fraudulent practices, the Brother Entities have
16  continually misled consumers regarding the printing characteristics and capabilities
17  of Brother Devices and Brother Cartridges.  In particular, the Brother Entities
18  repeatedly informed Class members falsely that their Brother Cartridges' toner supply
19  was "low" or "empty" or had reached its "life end."

20      39.    In addition, the Brother Entities have unjustly enriched themselves at the
21  expense of Class members by means of their unlawful conduct.  The Brother Entities
22  has generated sales of Brother Devices that never would have occurred at the prices
23  that prevailed during the Class Period, if at all, had the Brother Entities informed
24  consumers that Brother Devices prevent consumers from utilizing all of the high-cost
25  toner contained in Brother Cartridges.

26      40.    The Brother Entities' misleading conduct also caused Class members:
27  (a) to discard Brother Cartridges that contained more than sufficient toner to produce
28  quality images; and (b) to make premature and additional purchases of high-margin

AMENDED CLASS ACTION
COMPLAINT                          10

1   Brother Cartridges that Class members would not have bought if their existing

2   cartridges actually exhausted their toner supply before shutting down.

3       41.    As part of their conspiracy to induce consumers to purchase additional

4   Brother Products, the Brother Entities also made misleading disclosures designed to

5   prevent third-party manufacturers of replacement toner cartridges from procuring any

6   significant percentage of the market for replacement toner cartridges.  In particular,

7   the Brother Entities seek to maintain a near monopoly over the market for

8   replacement toner cartridges by delivering to consumers ominous, but false, warnings

9   regarding the supposed consequences of utilizing non-Brother cartridges with Brother

10  Devices.  The Brother Entities make those misleading disclosures in the manuals for

11  Brother Devices and in other advertising materials published on the Brother Entities'

12  websites.

13      42.    For example, the manual for the Brother Entities' popular MFC-8220

14  multi-function machine states:

15          Brother strongly recommends that you do not refill the toner cartridge
            provided with your MFC.  We also strongly recommend that you
16          continue to use only Genuine Brother Brand replacement toner cartridges
            (TN-540 and TN-570).  Using or attempting to use potentially
17          incompatible toner and/or toner cartridges in your MFC may cause
            damage to the machine itself and/or it may result in unsatisfactory print
18          quality.  Our warranty coverage does not apply to any problem that was
            caused by the use of unauthorized third party toner and toner cartridges.
19          To protect your investment and guarantee your print quality please
            continue to replace consumed toner cartridges with only Genuine
20          Brother Branded Supplies.

21      43.    The manual for the Brother Entities' popular HL-5240 and HL-5250DN

22  series of laser printers contains a substantially identical representation, as do the

23  manuals for all of the Brother Devices sold by the Brother Entities during the Class

24  Period.

25      44.    Contrary to these representations, multiple companies sell replacement

26  toner cartridges for Brother Devices that produce print equal in quality to the print

27  produced by Brother Cartridges.  The Brother Entities do not warn consumers of the

28  supposed dangers associated with utilizing other companies' toner cartridges because

AMENDED CLASS ACTION
COMPLAINT                           11

1  of any legitimate concern that the third-party cartridges will damage Brother Devices.

2  Rather, the Brother Entities issue their warnings solely to protect their dominance of

3  the lucrative market for replacement toner cartridges.

4  **B.    The Brother Entities' Misleading Representations Regarding The
       Supposed Printing Capacity Of Brother Devices And Brother Cartridges**

5

6      45.    Brother-US serves as the sole distributor within the United States of

7  Brother Devices and Printer Cartridges.  Brother-Japan manufactures those Brother

8  Devices and Cartridges with the intention that Brother-US will resell the Brother

9  Products to retailers located in California and throughout the United States.

10     46.    Brother-US distributes Brother products at the direction of Brother-

11 Japan, Brother-US's parent company.  Brother-US obtains all of the products that it

12 sells from Brother-Japan.  As such, Brother-US owes its existence to Brother-Japan,

13 and Brother-Japan controls the manner in which Brother-US markets Brother

14 Products in the United States and the disclosures that the Brother Entities make to

15 consumers regarding Brother Products.  As a result, Brother-Japan exerted absolute

16 control over Brother-US throughout the Class Period with respect to Brother-US's

17 marketing of Brother Products.

18     47.    Brother-US sells Brother Products through a number of distribution

19 channels.  For individual consumers and small businesses, Brother-US sells Brother

20 Products through electronics stores, office supply stores and "big box" retailers such

21 as Staples, OfficeMax, Office Depot, Costco, Walmart and Fry's Electronics.  In

22 addition, Brother-US sells Brother Products to consumers and small businesses by

23 means of online retailers such as Amazon.com, Buy.com, Best Buy and the online

24 divisions of office supply stores such as Staples, Office Max and Office Depot.

25     48.    In addition to the retail distribution channel, Brother-US sells Brother

26 Products to medium and large businesses, government entities, and schools directly

27 and through a group of authorized resellers, including Azerty Inc., Eastern

28 Distributing, HorizonUSA, Ingram Micro, Tech Data Corporation and United

AMENDED CLASS ACTION
COMPLAINT                              12

1   Stationers Inc.

2       49.    The Brother Entities endeavor to enhance their sales of Brother Products

3   through a wide variety of advertising that they place in various media, including

4   magazines, newspapers, their websites and other websites.

5       50.    In those advertisements, the Brother Entities have continually made

6   positive representations regarding the quality of Brother Products and their ability to

7   produce excellent images.  In addition, with respect to every Brother Device that the

8   Brother Entities sold during the Class Period, the Brother Entities published

9   advertisements that stated that the devices' Brother Cartridges would produce a

10  specified number of pages of print at 5% coverage of the average page with toner.

11      51.    Pursuant to the Brother Entities' conspiracy, the Brother Entities made

12  those misleading statements on their websites, in advertisements that appeared in

13  various media, in the devices' manuals and sales materials, and in materials included

14  within the packaging for Brother Products.

15      52.    For example, the manual for Brother's HL-8050N model laser printer

16  states that the device's TN1700 toner cartridge "yields approx. 17,000 pages @ 5%

17  coverage on Letter size" paper.  Similarly, the manual for the Brother HL-5240 laser

18  printer provides that the device's TN550 toner cartridge "yields approx. 3,500 pages

19  @ 5% coverage on letter size paper" and that the TN580 High Yield Toner Cartridge

20  for the same printer "yields approx. 7,000 pages @ 5% coverage on letter size paper."

21      53.    Those representations concerning the supposed printing capacity and

22  characteristics of Brother Cartridges were materially false and misleading, deceptive,

23  unlawful and fraudulent because the Brother Entities concealed from consumers that:

24  (a) the Brother Entities programmed Brother Devices to prevent Brother Cartridges

25  from fully utilizing their toner supply by causing the devices to stop all printing after

26  the cartridges had produced a pre-determined number of pages; (b) Brother Devices

27  can produce hundreds, or even thousands, of additional pages of type after their

28  displays indicate that their Brother Cartridges are "low" or "empty" or that the

AMENDED CLASS ACTION
COMPLAINT                    13

cartridges have reached their "life end"; and (c) Brother Devices lack the ability to accurately measure the volume of toner remaining in Brother Cartridges.

54.    The Brother Entities also advanced their conspiracy to induce consumers to purchase Brother Devices and additional high-margin Brother Cartridges (and thereby significantly enhance the Brother Entities' profitability at the direct expense of Class members) by causing Brother Devices' LED and LCD displays to give false signals that induced consumers to purchase additional Brother Cartridges.

55.    All Brother Devices that the Brother Entities sold during the Class Period had one or more displays that provided various information to consumers regarding the devices' operation.  For example, some Brother Devices had LCD displays that indicated verbally when the devices were "Printing," in "Sleep" mode, "Receiving Faxes" or "Copying" documents.  Other Brother Devices had "LED" buttons that lit up in particular colors to provide consumers with information concerning the operation of their devices.  The Brother Devices' LED and LCD displays also communicated to consumers error messages and instructions regarding the operation of the devices.

56.    Most importantly, the Brother Entities programmed every Brother Device that they sold during the Class Period to falsely indicate to consumers in certain circumstances that the supply of toner in Brother Cartridges was "low" or "empty" and that the cartridges had reached their "life end."  Those representations were materially false and misleading because: (a) the Brother Entities programmed Brother Devices to prevent Brother Cartridges from fully utilizing their toner supply by causing the devices to stop printing after the cartridges had produced a pre-determined number of pages; (b) Brother Devices can produce hundreds, or even thousands, of additional pages of type after their displays indicate that their Brother Cartridges are "low" or "empty" or that the cartridges have reached their "life end"; and (c) Brother Devices lack the ability to accurately measure the volume of toner remaining in Brother Cartridges.

AMENDED CLASS ACTION
COMPLAINT                                14

57.     Nevertheless, the Brother Entities reinforced the misleading quality of the signals that they caused Brother Devices to provide to consumers through false characterizations regarding the significance of those signals that the Brother Entities published in the Brother Devices' manuals and on the Brother Entities' websites.

58.     For example, the manual for the Brother Entities' popular HL-5240 and HL-5250DN series of laser printers states that, when the light next to the word "Toner" on the printers' display flashes on for two seconds and off for three seconds, that signal "[i]ndicates that the toner cartridge is nearly empty."  In those circumstances, the manual advises consumers to "[b]uy a new toner cartridge and have it ready for when Toner life end is indicated."

59.     The same manual states:

> **Toner Low Message**
>
> The **Toner** LED will turn on for 2 seconds and off for 3 seconds. . . .
>
> If the LED shows this message, the printer has nearly run out of toner.  Buy a new toner cartridge and have it ready before you get a Toner Life End message. . . .
>
> The Toner LED will blink continuously if the toner cartridge is nearly empty.

60.     In addition, the manual for the HL-5240 and HL-5250DN laser printers states that "[t]he printer will stop printing until you replace the toner cartridge with a new one" when those printers exhibit the "Toner Life End message."  According to the manual, the printers provide that signal by continuously illuminating the "Toner" and "Status" lights on the printers in yellow and red, respectively.

61.     Similarly, the manual for the Brother MFC-8220 multi-function machine states that, when the machine's LCD display is red and displays the message "Toner empty," consumers must "[r]eplace the toner cartridge with a new one."  The manual also states that, when the MFC-8220's LCD display reads "Toner Empty," the "[t]oner is used up and printing is not possible."  In addition, the manual states that a "Toner Low" message on the MFC-8220's LCD display signifies that "the toner is depleted

AMENDED CLASS ACTION
COMPLAINT                                              15

1   and the MFC is telling you that the toner will soon run out." As a result, the manual

2   instructs consumers to "[o]rder a new toner cartridge now."

3       62.   In every manual for every Brother Device that the Brother Entities sold

4   during the Class Period, the Brother Entities falsely informed Class members that the

5   "low" signal delivered by Brother Devices meant, in words or substance, that their

6   Brother Cartridges were "nearly empty" and that consumers should purchase new

7   Brother Cartridges. Similarly, in words or substance, the Brother Entities stated in

8   the manual for every Brother Device that they sold during the Class Period that the

9   "empty" or "life end" signal meant that all "[t]oner is used up and printing is not

10  possible" and that consumers had to "[r]eplace the toner cartridge with a new one."

11      63.   These statements regarding the printing capacity and characteristics of

12  Brother Devices and Brother Cartridges were also materially false and misleading

13  because the Brother Entities concealed that: (a) Brother Devices falsely inform

14  consumers that the toner supply in Brother Cartridges is low or empty and that the

15  cartridges have reached their life end; (b) Brother Devices can produce hundreds, or

16  even thousands, of additional pages of type after their displays indicate that their

17  Brother Cartridges are "low" or "empty" or that the cartridges have reached their "life

18  end"; (c) the Brother Entities have programmed Brother Devices to shut down

19  prematurely, purportedly because their Brother Cartridges are "empty" and have

20  reached their "life end," even though those toner cartridges contain more than

21  sufficient toner to print excellent images; (d) the Brother Entities have programmed

22  Brother Devices to prevent Brother Cartridges from fully utilizing their toner supply

23  after the cartridges have printed a pre-determined number of pages; and (e) Brother

24  Devices lack the ability to measure the volume of toner actually remaining in Brother

25  Cartridges.

26      64.   In light of the misleading quality of the representations that the Brother

27  Entities made to consumers regarding the printing capacity of Brother Cartridges,

28  Brother-US was obligated to disclose those adverse facts to consumers. At no time

AMENDED CLASS ACTION
COMPLAINT                          16

during the Class Period, however, did Brother-US fulfill its responsibility to reveal those facts, which were highly material to consumers' decisions to replace the Brother Cartridges in their devices.

65.     The Brother Entities' false and misleading representations regarding the capacity of Brother Cartridges were also undeniably material to Class Members' decisions to purchase Brother Devices in the first place.  Had the Brother Entities disclosed, as they were obligated to under the circumstances, that Brother Devices prevented additional printing long before Brother Cartridges expended their toner supply, Plaintiff and other Class Members would not have purchased Brother Devices at the prices that prevailed during the Class Period, if at all.

66.     By concealing these adverse facts, the Brother Entities also fraudulently concealed from Plaintiff and the members of the Class the facts necessary to establish Class members' claims.  Until shortly before they filed their claims, Plaintiff was not aware of the facts that the Brother Entities concealed.  In particular, Plaintiff had no reason to believe that the Brother Entities had concealed the facts specified in paragraphs 53, 56 and 63.

67.     The Brother Entities also affirmatively concealed their misleading, unlawful and fraudulent conduct through the representations that they caused their customer service representatives to make to consumers.  Specifically, when consumers questioned why Brother Devices would not print although they were producing high quality images immediately before the devices signaled that their toner supply was "empty" or had reached their "life end," the Brother Entities' customer service representatives falsely informed consumers that Brother Devices stop printing when necessary to maintain their "print quality."

68.     In light of the Brother Entities' business strategy of selling Brother Devices to consumers at low prices while profiting greatly through the sale of high-margin Brother Cartridges and other "consumables" (such as drum units), the entire business model utilized by the Brother Entities in connection with the sale of Brother

AMENDED CLASS ACTION
COMPLAINT                          17

1   Products is a fraud.  Throughout the Class Period, the Brother Entities have

2   consistently lined their pockets with consumers' money while concealing from the

3   same consumers that the Brother Entities' representations regarding the amount of

4   toner remaining in Brother Cartridges were materially false and misleading.

**C.   The Brother Entities' Successful Efforts To Unjustly
Enrich Themselves By Misleading Plaintiff**

5
6
       69.    The Brother Entities have victimized Plaintiff, and unjustly enriched

7   themselves, by engaging in the same misleading, unfair, deceptive and fraudulent

8   conduct that the Brother Entities have directed at the other members of the Class.

9
       70.    Plaintiff Kandel purchased a Brother Fax-2800 for personal business use.

10  Kandel would not have purchased his Fax-2800 at the price that he paid had the

11  Brother Entities disclosed the true facts concerning the printing capacity and

12  characteristics of the Fax-2800 set forth in paragraphs 53, 56 and 63.

13
       71.    During the class period Kandel personally replaced the toner cartridge on

14  multiple occasions after the Fax-2800 displayed a "Toner Empty" message and

15  refused to print.

16
       72.    Kandel replaced his Fax-2800's Brother Cartridge with new Brother

17  cartridges although lower priced replacement cartridges manufactured by other

18  companies would have produced print equal in quality to the Brother Cartridges at a

19  lower price.  Kandel purchased and utilized the Brother Cartridges because of the

20  Brother Entities' warnings regarding the supposed dangers of utilizing toner

21  cartridges manufactured by other companies.  Kandel would not have paid the prices

22  for new Brother Cartridges that he paid during the Class Period had the Brother

23  Entities disclosed the true facts concerning the printing capacity and characteristics of

24  the Fax-2800 set forth in paragraphs 53, 56 and 63.  Kandel eventually began using

25  lower priced "generic" cartridges and experienced no decrease in print quality.

26
       73.    According to the Brother Entities' manual for the Fax-2800, the TN-250

27  cartridge "can print approximately 2,200 pages with one toner cartridge" and has a

28

AMENDED CLASS ACTION
COMPLAINT                              18

1    "life expectancy" of "[u]p to 2,200 pages" when printing letter-sized paper at 5%

2    print coverage.  At no point did either Brother Entity disclose to Kandel any of the

3    concealed facts set forth in paragraphs 53, 56 and 63.

4          74.    The manual for the Fax-2800 also sets forth misleading statements

5    regarding the significance of the "low" and "empty" toner signals that closely parallel

6    the "disclosures" that the Brother Entities made in the manuals for other Brother

7    Devices.  The Fax-2800 manual states, for example, that: (a) when the Fax-2800's

8    Brother Cartridge and drum unit are installed properly, a "Toner Empty" message

9    means that "[t]oner is used up and printing is not possible"; (b) consumers who

10   receive the "Toner Empty" message must "replace the toner cartridge with a new

11   one"; (c) "[i]f the LCD shows TONER LOW, you can still print[,] [b]ut the toner is

12   depleted the fax machine is telling you that the toner will soon run out";

13   (d) consumers who receive the "TONER LOW" message must "[o]rder a new toner

14   cartridge now"; (e) "[w]hen the toner cartridge is running low, the LCD shows

15   TONER LOW"; and (f) "[i]t is a good idea to keep a new toner cartridge ready for use

16   when you see the TONER LOW warning."  Those representations were materially

17   false and misleading for the reasons set forth in paragraphs 53, 56 and 63.

18         75.    The warnings set forth in the Fax-2800's manual regarding the use of

19   non-Brother toner cartridges are also essentially the same as, if not more dire than, the

20   warnings published in the manuals for all of the other Brother Devices that the

21   Brother Entities sold during the Class Period.  In particular, the Fax-2800's manual

22   states that the device's warranty is voided if "non Brother-brand or non Brother

23   approved parts, supplies, power supplies or other accessories have been used with

24   [the Fax-2800]."  Moreover, the manual provides:

25             You can use only a genuine Brother toner cartridge (TN-250 series),
              which is specially formulated to ensure top print quality.  Using another
26            brand of toner cartridge may void your machine's warranty.  Warranty
              coverage does not apply to problems caused by the use of 3rd party
27            Toner, 3rd party Toner Cartridge or 3rd party Drum unit.

28

AMENDED CLASS ACTION
COMPLAINT                              19

# FIRST CAUSE OF ACTION

## (Violation of the CLRA)

76.     Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

77.     Plaintiff brings this claim for violations of the CLRA against Brother-US on behalf of himself and all members of the Class who satisfy the definition of "consumer" set forth in Cal. Civ. Code § 1761.

78.     Plaintiff is a consumer within the meaning of Cal. Civ. Code § 1761 because he purchased a Brother Device and Brother Cartridges for personal use.

79.     Plaintiff may maintain this action as a class action under § 1781 of the CLRA for the reasons set forth in paragraphs 20-28 and 69-75.

80.     Brother-US and its co-conspirator, Brother-Japan, violated § 1770(a)(5) of the CLRA by representing to Class members that Brother Products have characteristics, uses, benefits, and quantities that they do not have.  In particular, the Brother Entities stated that Brother Devices would print until they reached their "life end" or until they were "empty."  In fact, however, the Brother Entities designed Brother Devices to cease printing well before they had exhausted their toner supply.  Similarly, the Brother Entities represented that Brother Cartridges would print a specified number of pages at an average of 5% coverage per page with toner.  To the contrary, however, the Brother Entities established an absolute upper limit on the number of pages that Brother Cartridges would print, irrespective of the volume of toner remaining in those cartridges.

81.     In light of the representations that the Brother Entities made concerning the printing characteristics of Brother Devices and Brother Cartridges, the Brother Entities were obligated to disclose that: (a) Brother Devices prevented additional printing after Brother Cartridges had produced a pre-determined number of pages, irrespective of the actual level of toner remaining in the cartridges; (b) Brother Devices were not capable of accurately measuring the level of toner remaining in

AMENDED CLASS ACTION
COMPLAINT                              20

1    Brother Cartridges; (c) Brother Devices indicate that the toner supply in Brother
2    Cartridges is "low" or "empty" and that the cartridges have reached their "life end"
3    although those representations are false; and (d) Brother Devices can produce
4    hundreds, or even thousands, of additional pages of print after their displays indicate
5    that their Brother Cartridges are "low" or "empty" or that the cartridges have reached
6    their "life end."  In violation of their disclosure obligations, the Brother Entities never
7    revealed any of those facts to Class members.

8        82.    Brother-US and its co-conspirator, Brother-Japan, violated § 1770(a)(7)
9    of the CLRA by representing to Class members that Brother Products are of a
10   particular standard, quality, or grade although they are of another.  Again, by
11   representing that Brother Devices would print until their Brother Cartridges were
12   "empty" or had reached their "life end" and by stating that Brother Cartridges would
13   print a specified number of pages at 5% coverage of each page with toner, the Brother
14   Entities misled consumers.  The Brother Entities also misled consumers regarding the
15   standard, quality and grade of Brother Devices and Brother Cartridges by concealing
16   the adverse facts specified in paragraphs 53, 56 and 63.

17       83.    Brother-US and its co-conspirator, Brother-Japan, violated § 1770(a)(9)
18   of the CLRA by advertising Brother Devices and Brother Cartridges for sale with the
19   intent not to sell them as advertised.  According to the Brother Entities'
20   advertisements, Brother Devices printed until their toner cartridges were "empty" or
21   reached their "life end" and Brother Cartridges printed specified numbers of pages at
22   5% coverage of the average page with toner.  Contrary to the representations in those
23   advertisements, Brother Devices did not print until their Brother Cartridges were
24   empty, and Brother Cartridges were not nearly exhausted when the devices signaled
25   that their toner supply was low.  Contrary to the Brother Entities' representations
26   concerning the printing capacity of Brother Cartridges, the Brother Entities caused
27   Brother Devices to cease printing after they had produced a pre-determined number
28   of pages, irrespective of the actual amount of toner remaining in those cartridges.

AMENDED CLASS ACTION
COMPLAINT                    21

1 Furthermore, the Brother Entities' advertising violated § 1770(a)(9) by failing to
2 disclose the adverse facts set forth in paragraphs 53, 56 and 63.

3      84.    Brother-US and its co-conspirator, Brother-Japan, also violated
4 § 1770(a)(15) of the CLRA by falsely representing through the signals delivered by
5 Brother Devices, the text of the devices' manuals and other advertisements that Class
6 members needed parts or replacements (*i.e.*, new Brother Cartridges) when the
7 consumers did not in fact need those new cartridges.

8      85.    The Brother Entities unjustly enriched themselves by means of their
9 CLRA violations. The Brother Entities would not have succeeded in selling Brother
10 Devices at the prices that prevailed during the Class Period had they made full and
11 fair disclosures to Class members concerning the printing capacity and characteristics
12 of those devices.

13      86.    Likewise, the Brother Entities would not have been able to sell Brother
14 Cartridges at the prices that prevailed during the Class Period had they made full
15 disclosures to Class members concerning the printing capacity and characteristics of
16 those cartridges. The Brother Entities also would have sold significantly fewer
17 Brother Cartridges had they permitted Class members to exhaust the cartridges' toner
18 supply before the consumers' Brother Devices ceased printing.

19      87.    By virtue of the Brother Entities' violations of the CLRA, Plaintiff and
20 the members of the Class are entitled to: (a) an injunction prohibiting Brother-US
21 from continuing its misleading conduct, including its false disclosures concerning the
22 printing capacity and characteristics of Brother Products; (b) an injunction requiring
23 Brother-US to make the disclosures necessary to correct their misleading statements
24 concerning the printing capacity of Brother Devices and Brother Cartridges and the
25 circumstances in which Brother Devices will cease printing; (c) restitution, either
26 directly or by means of a fluid recovery, of the excess revenue that the Brother
27 Entities derived from Class members through their unlawful efforts to cause Class
28 members to purchase Brother Devices at inflated prices and to purchase Brother

AMENDED CLASS ACTION
COMPLAINT          22

1 | Cartridges before the Class members utilized all of the toner remaining in their

2 | existing cartridges; and (d) the payment of Plaintiff's attorneys' fees and expenses.

3 |       88.    In accordance with Cal. Civ. Code § 1782(a), Plaintiff's counsel

4 | provided Brother-US with written notice on June 4, 2007, July 25, 2008 and

5 | September 19, 2008 of Plaintiff's intention to pursue a claim for damages against

6 | Brother-US as a result of its violations of the CLRA and of the nature of those alleged

7 | violations. Despite that notice, Brother-US has not ceased its misleading, fraudulent

8 | and unlawful conduct.

9 |       89.    As a result, Plaintiff and the members of the Class are also entitled to an

10 | award of damages and punitive damages against Brother-US in an amount to be

11 | determined at trial.

12 | **SECOND CAUSE OF ACTION**

13 | **(Violation of the UCL)**

14 |       90.    Plaintiff hereby incorporates by reference each of the preceding

15 | allegations as if fully set forth herein.

16 |       91.    Plaintiff brings this claim for violations of the UCL against Brother-US

17 | on behalf of himself and all members of the Class.

18 |       92.    Brother-US and its co-conspirator, Brother-Japan, have engaged in

19 | unlawful, unfair and fraudulent business acts and practices and have published unfair,

20 | deceptive, untrue and misleading advertisements, all in violation of the UCL.

21 |       93.    In particular, the Brother Entities violated the UCL by selling Brother

22 | Devices and Brother Cartridges by means of the material misrepresentations and

23 | omissions that Plaintiff particularizes above and by preventing Class members from

24 | utilizing all of the toner remaining in their Brother Cartridges although those toner

25 | cartridges were perfectly capable of producing quality print.

26 |       94.    By means of their violations of the UCL, including the CLRA violations

27 | that Plaintiff sets forth in his First Cause of Action, the Brother Entities have unjustly

28 | enriched themselves in the manners described in paragraphs 39-40 and 85-86.

AMENDED CLASS ACTION
COMPLAINT                23

95.     Pursuant to Bus. and Prof. Code § 17203, Plaintiff and the members of the Class are therefore entitled to a judgment: (a) requiring Brother-US to cease the acts of unfair competition alleged herein, including its misleading disclosures and its practice of preventing consumers from utilizing all of the toner in the consumers' Brother Cartridges by prematurely causing Brother Devices to indicate that those cartridges are empty and incapable of producing additional print; (b) requiring Brother-US to correct the misleading disclosures alleged herein; (c) requiring Brother-US to account for and disgorge the excess revenue that the Brother Entities obtained from Class members by means of the Brother Entities' acts of unfair competition and to pay restitution to the members of the Class through direct reimbursement or a fluid recovery; (d) awarding Plaintiff and the members of the Class their attorneys' fees pursuant to Cal. Code Civ. P. § 1021.5; and (e) awarding Plaintiff and the Class the costs that they incur in connection with this litigation.

## THIRD CAUSE OF ACTION

### (Violation of Bus. & Prof. Code § 17500 et seq.)

96.     Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

97.     Plaintiff brings this claim against Brother-US for violations of California's false advertising law, Bus. & Prof. Code § 17500 *et seq.,* on behalf of himself and all Class members.

98.     Brother-US and its co-conspirator, Brother-Japan, have made, disseminated, and caused to be made and disseminated to the public in this State untrue and misleading statements concerning Brother Products with the intent to sell Brother Devices and Brother Cartridges to Plaintiff and the members of the Class.

99.     The Brother Entities made those untrue and misleading statements by means of: (a) the manuals that they distributed with Brother Devices and posted on the Brother Entities' web sites; (b) the packaging for Brother Devices and Brother Cartridges; (c) various advertisements stating the supposed printing capacity and

AMENDED CLASS ACTION
COMPLAINT                                   24

characteristics of Brother Products; (d) brochures available on the Brother Entities' websites; and (e) the messages that the Brother Entities conveyed to Class members through the LED and LCD displays of Brother Devices.

100.    Throughout the Class Period, the Brother Entities were well aware of the false and misleading nature of their misrepresentations and omissions.  The Brother Entities have received numerous complaints from consumers regarding the misleading nature of their statements, and have intentionally designed Brother Devices to cease operation after printing a pre-determined number of pages without regard to the actual volume of toner remaining in the devices' Brother Cartridges.  At a minimum, the Brother Entities, as the manufacturer and distributor of Brother Products, would have learned of the false and misleading nature of their representations had they employed reasonable care to determine whether their statements were materially accurate.

101.    By means of their violations of the false advertising law, including the CLRA violations that Plaintiff sets forth in his First Cause of Action, the Brother Entities unjustly enriched themselves in the manners described in paragraphs 39-40 and 85-86.

102.    Pursuant to Bus. and Prof. Code § 17535, Plaintiff and the members of the Class are therefore entitled to a judgment: (a) requiring Brother-US to cease the acts of unfair competition alleged herein, including the misleading advertising that Plaintiff particularizes above; (b) requiring Brother-US to correct its misleading advertisements; (c) requiring Brother-US to account for and disgorge the excess revenue that the Brother Entities obtained from Class members by means of the Brother Entities' acts of unfair competition and to pay restitution to the members of the Class through direct reimbursement or a fluid recovery; (d) awarding Plaintiff and the members of the Class their attorneys' fees pursuant to Cal. Code Civ. P. § 1021.5; and (e) awarding Plaintiff and the Class the costs that they incur in connection with this litigation.

AMENDED CLASS ACTION
COMPLAINT                                25

# FOURTH CAUSE OF ACTION

## (Trespass to Chattels)

103.   Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

104.   Plaintiff asserts this claim for trespass to chattels against Brother-US on behalf of himself and all Class members.

105.   By intentionally programming Brother Devices and Brother Cartridges to stop printing after they have produced a pre-determined number of pages without regard to the actual amount of toner left in the Brother Cartridges, Brother-US and its co-conspirator, Brother-Japan, have unlawfully interfered with the ability of Plaintiff and the members of the Class to utilize their Brother Products.

106.   Through their unlawful, conspiratorial conduct, the Brother Entities have unjustly enriched themselves at the direct expense of Plaintiff and the members of the Class.

107.   As a direct and proximate result of the Brother Entities' intentional interference with Class members' rights to utilize their Brother Products, the members of the Class have suffered significant financial losses.

108.   Plaintiff and the members of the Class are therefore entitled to an order requiring Brother-US: (a) to account for and disgorge the excess revenue that the Brother Entities obtained from Class members by means of the Brother Entities' acts of unfair competition; (b) to pay restitution to the members of the Class through direct reimbursement or a fluid recovery; (c) to pay damages and punitive damages in an amount to be determined at trial; (d) to pay the attorneys' fees incurred by Plaintiff and the members of the Class pursuant to Cal. Code Civ. P. § 1021.5; and (e) to pay the costs that Plaintiff and the Class incur in connection with this litigation.

AMENDED CLASS ACTION
COMPLAINT                                        26

# FIFTH CAUSE OF ACTION

## (Money Had and Received)

109.   Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

110.   Plaintiff brings this cause of action against Brother-US for money had and received on behalf of himself and the members of the Class.

111.   As detailed above, Brother-US and its co-conspirator, Brother-Japan, fraudulently obtained payments from Plaintiff and the members of the Class by causing Brother Devices to cease printing before their Brother Cartridges exhausted their supply of toner.  By causing the Brother Devices to stop printing prematurely and concurrently informing consumers that their Brother Cartridges were empty or had reached their life end, the Brother Entities unjustly enriched themselves at the expense of Plaintiff and the members of the Class.

112.   The Brother Entities' deceptive and unlawful conduct has caused Plaintiff and the members of the Class to purchase Brother Cartridges that they did not need, thereby significantly increasing the expense of operating Class members' Brother Devices and increasing the Brother Entities' revenue and profits.

113.   In light of the Brother Entities' unlawful, misleading and inequitable conduct, equity and good conscience dictate that Brother-US should: (a) account for and pay restitution to the members of the Class by direct reimbursement or a fluid recovery for the additional revenue that the Brother Entities generated by means of their misconduct; (b) pay the attorneys' fees incurred by Plaintiff and the members of the Class in connection with this action pursuant to Cal. Code Civ. P. § 1021.5; and (c) pay the costs that Plaintiff and the Class incur in connection with this litigation.

114.   Plaintiff and the members of the Class have no adequate remedy at law to prevent the Brother Entities from continuing their unlawful practice of depriving Class members of the ability to fully utilize the Brother Cartridges that they must purchase to operate their Brother Devices.  Plaintiff and the Class are therefore

AMENDED CLASS ACTION
COMPLAINT                                     27

1  entitled to an injunction requiring Brother-US to cease its deceptive practices.

2  **PRAYER FOR RELIEF**

3  WHEREFORE, Plaintiff, on behalf of himself and the members of the Class,

4  prays for judgment and relief as follows:

5  a.  An order certifying that this action may be maintained as a class

6  action and appointing Plaintiff's counsel as lead counsel for the Class;

7  b.  An order enjoining Brother-US from engaging in the unfair,

8  unlawful, deceptive, misleading and fraudulent acts and practices that Plaintiff alleges

9  in this Amended Complaint;

10  c.  An order requiring Brother-US to make full and corrective

11  disclosures regarding its practice of preventing consumers from fully utilizing the

12  toner contained in Brother Cartridges;

13  d.  An order imposing a constructive trust upon the revenue that the

14  Brother Entities have generated through their deceptive and unlawful conduct;

15  e.  An order requiring Brother-US to account for and disgorge all of

16  the revenue that the Brother Entities have obtained from Class members through the

17  improper conduct alleged herein;

18  f.  An order requiring Brother-US to pay restitution to the members

19  of the Class of the full amount by which the Brother Entities have unjustly enriched

20  themselves by misleading the members of the Class through direct reimbursement of

21  Class members or a fluid recovery;

22  g.  Compensatory damages;

23  h.  Punitive damages;

24  i.  Prejudgment and post-judgment interest at the prevailing legal

25  rate;

26  j.  Plaintiff's attorneys' fees and costs of suit; and

27  k.  Such other and further relief as the Court may deem just and

28  necessary.

AMENDED CLASS ACTION
COMPLAINT                                    28

1

## **JURY DEMAND**

2        Plaintiff, on behalf of himself and all others similarly situated, hereby demands

3   trial by jury with respect to all issues so triable.

4

5   DATED: November 24, 2008                    KALCHEIM LAW GROUP, P.C.

6

7                                                        _____
                                                         AMBER S. HEALY
8                                                        Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED CLASS ACTION
COMPLAINT                              29

## DECLARATION OF JEFF KANDEL

I, Jeff Kandel, being duly sworn, hereby state as follows:

1.    I am the plaintiff in this action.

2.    I am a resident of Los Angeles, California.  During the class period I was subject to the conduct alleged in my complaint regarding Brother branded printers.

3.    I am informed and believe that Defendant in this action conducts substantial business activity in Los Angeles County, including the conduct that is detailed in my complaint.


I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct to the best of my knowledge this 20th day of November 2008 in Sherman Oaks, California.

Jeff Kandel

1

DECLARATION OF JEFF KANDEL

1

## PROOF OF SERVICE

2    I, Stephanie M. Williams, declare that I am over the age of eighteen (18) years and not a
party to this action.  My business address is 9300 Wilshire Blvd., Suite 508, Beverly Hills,
3  California 90212.  On **November 24, 2008**, I served a true and correct copy of the following
document(s) described as:
4

5    ## AMENDED CLASS ACTION COMPLAINT

6    The documents were served on the persons listed below:

7
**Layne Melzer**
8  Karen Walter
Rutan & Tucker
9  611 Anton Blvd., Suite 1400
Costa Mesa, CA 92626-1931
10

11  The documents were served by the following means:

12    _XX_ **By United States Mail.**  I enclosed the documents in a sealed envelope or package
addressed to the persons at the addresses listed above by placing the envelope for collection and
13  mailing, following our ordinary business practices.  I am readily familiar with this business's
practice for collecting and processing correspondence for mailing.  On the same day that
14  correspondence is placed for collection and mailing, it is deposited in the ordinary course of business
with the United States Parcel Service, in a sealed envelope with postage fully prepaid.
15

16    ___ **By Fax Transmission.**  I transmitted via facsimile machine the document(s) listed above
to the fax number(s) set forth below on this date at approximately _____.m.  The outgoing
17  facsimile machine telephone number in this office is (310) 461-1212.  The facsimile machines used
in this office create a transmission report for each outgoing facsimile transmitted.  A copy of the
18  transmission report(s) for the service of this document, properly issued by the facsimile machine(s)
that transmitted this document and showing that such transmission was (transmissions were)
19  completed without error.

20    ___ **By Overnight Delivery.**  I enclosed the documents by placing them in an envelope or
21  package addressed to the persons at the addresses listed above.  I placed the envelope or package for
collection and overnight delivery at an office or a regularly utilized drop box of the overnight carrier.
22

23    I declare under penalty of perjury under the laws of the State of California and the
24  United States of America that the above is true and correct.

25    Executed on **November 24, 2008**, at Los Angeles, California.

26

27                                    Stephanie M. Williams
28
1
PROOF OF SERVICE

I:\Active Civil Library\Brother\Admin\081124 POS.Doc