1   KALCHEIM LAW GROUP, P.C.
    Mitch Kalcheim (SBN 175846)
2   Amber Healy (SBN 232730)
    9300 Wilshire Boulevard, Suite 508
3   Beverly Hills, California 90212
    Telephone: (310) 461-1210
4   Facsimile: (310) 461-1212

5   *Attorneys for Plaintiff*

6             UNITED STATES DISTRICT COURT
7             CENTRAL DISTRICT OF CALIFORNIA

8   JEFF KANDEL, individually and        No. CV08-1040 DSF(RCx)
    on behalf of all others similarly
9   situated,                            [Assigned to the Hon. Dale S. Fischer]

10                                        **CLASS ACTION**
                      Plaintiff,
11                                        PLAINTIFFS' NOTICE OF MOTION
            v.                            AND MOTION FOR CLASS
12                                        CERTIFICATION; MEMORANDUM
    BROTHER INTERNATIONAL                 OF POINTS AND AUTHORITIES IN
13  CORP. and BROTHER                     SUPPORT OF MOTION FOR CLASS
    INDUSTRIES LTD.                       CERTIFICATION
14
                                          DATE: January 11, 2010
15                    Defendants.         TIME: 1:30 P.M.
                                          DEPT.: 840
16
                                          Date Action Filed (Kandel):  12/18/07
17                                        Date Action Filed (Lipper):  9/17/08
                                          Removal Date (Kandel):       2/14/08
18                                        Trial Date:                  4/5/11
19

20
    DAVID LIPPER, individually and
21  on behalf of all others similarly     No. CV-08-06126 DSF (RCx)
    situated,
22                    Plaintiff,

23          v.

24  BROTHER INTERNATIONAL
    CORP. and BROTHER
25  INDUSTRIES LTD.,

26
                      Defendants.
27

28

**TO ALL PARTIES AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE THAT**, on January 11, 2010, at 1:30 P.M. or as soon thereafter as counsel may be heard in the courtroom of the Hon. Dale S. Fischer, located at 25 East Temple Street, Courtroom 840, Los Angeles, CA 90012, Plaintiffs Jeff Kandel, David Lipper and Symeon Argyropoulos ("Plaintiffs") will move, pursuant to Fed. R. Civ. P. 23 to certify a class, to have Plaintiffs certified as the representatives of the proposed class and to have the Kalcheim Law Group, P.C. and Shalov Stone Bonner & Rocco LLP certified as counsel for the Class.

The proposed Class consists of: (a) all California consumers who purchased Brother-brand laser printers, facsimiles or multi-function machines (collectively, "Brother Devices") or Brother-brand toner cartridges ("Brother Cartridges") manufactured by defendant Brother Industries Ltd. ("Brother-Japan") and distributed by defendant Brother International Corp. ("Brother-US") during the period from December 18, 2003 through the date a class is certified in this action (the "Class Period"); and (b) all consumers who purchased Brother Devices or Brother Cartridges (collectively, the "Brother Products") from businesses located within the State of California during the Class Period.

Plaintiffs base their motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declarations of Mitch Kalcheim, Kaiser Wong, David Lipper, Symeon Argyropoulos and James P. Bonner and the Exhibits to those declarations, all pleadings, papers and records on file in these actions, the matters about which the Court may take judicial notice and the oral argument and documentary evidence that the parties present at the time of the hearing.

1

1    Plaintiffs file this motion following the conference of counsel pursuant to Local

2 Rule 7-3, which took place on September 8, 2009.

3

4 Dated: October 9, 2009                    KALCHEIM LAW GROUP, P.C.

5                                           By:   /s/ Mitch Kalcheim

6                                                 Mitch Kalcheim (SBN 175846)

7                                           Counsel for Plaintiffs

8
**OF COUNSEL:**
9
**SHALOV STONE BONNER & ROCCO LLP**
10 James P. Bonner
Patrick L. Rocco
11 485 Seventh Avenue, Suite 1000
New York, New York 10018
12 (212) 239-4340
(212) 239-4310
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

# TABLE OF CONTENTS

2

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

3

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

THE RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

6

I.    THE LIBERAL STANDARDS GOVERNING
7         CLASS CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8    II.   THE CLASS SATISFIES ALL REQUIREMENTS
         FOR CERTIFICATION PURSUANT TO RULE 23(b)(2)
9         AND RULE 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10        A.    The Class Satisfies Each Requirement Of Rule 23(a) . . . . . . . . . . . . 7

11              1.    The Class Satisfies Rule 23(a)'s Numerosity Requirement . . . . . 7

12              2.    Class Members' Claims Present Common
                     Questions Of Law And Fact . . . . . . . . . . . . . . . . . . . . . . . . . . 8
13
                3.    Plaintiffs' Claims Are Typical Of Those Of The
14                   Absent Members Of The Class . . . . . . . . . . . . . . . . . . . . . . . 10

15              4.    Plaintiffs Will Fairly And Adequately Protect The
                     Interests Of The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
16
         B.    The Class Meets The Rule 23(b)(2) And 23(b)(3)
17              Requirements For Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18              1.    Certification Is Appropriate Pursuant To Rule
                     23(b)(2) Because Defendants Have Acted And
19                   Refrained From Acting In A Manner That Applies
                     Generally To All Class Members . . . . . . . . . . . . . . . . . . . . . . 14
20
                2.    Certification Is Appropriate Pursuant To Rule
21                   23(b)(3) Because Common Questions of Law Or
                     Fact Predominate Over Individual Questions . . . . . . . . . . . . . 17
22
23                   a.    Rule 23(b)(3)'s Basic Requirements . . . . . . . . . . . . . . 17

                     b.    Common Issues Predominate With
24                         Respect To The UCL And FAL Claims . . . . . . . . . . . . 17

25                   c.    Common Issues Predominate With
                           Respect To The CLRA Claim . . . . . . . . . . . . . . . . . . 20
26
                3.    A Class Action Provides The Superior
27                   Means For Resolving This Controversy . . . . . . . . . . . . . . . . . 23

28

III.   THE COURT SHOULD APPOINT PLAINTIFFS'
       COUNSEL AS CLASS COUNSEL ............................... 24

CONCLUSION ............................................. 25

# **TABLE OF AUTHORITIES**

## *Cases*

*Alba v. Papa John's USA, Inc.,*
  2007 WL 953849 (C.D. Cal. Feb. 7, 2007) . . . . . . . . . . . . . . . . . . . . . 8, 13

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

*Andrews Farms v. Calcot, Ltd.,*
  __ F.R.D. __, 2009 WL 2423701 (E.D. Cal. Aug. 5, 2009) . . . . . . . . . . . . . 23

*Baghdasarian v. Amazon.com, Inc.,*
  258 F.R.D. 383 (C.D. Cal. Jul. 7, 2009) . . . . . . . . . . . . . . . . . . . . . *passim*

*Ballard v. Equifax Check Servs., Inc.,*
  186 F.R.D. 589 (E.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16, 24

*Bibo v. Federal Exp., Inc.,*
  2009 WL 1068880 (N.D. Cal. Apr. 21, 2009) . . . . . . . . . . . . . . . . . . . . . 22

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 10, 21

*Bristow v. Lycoming Engines,*
  2007 WL 1752602 (E.D. Cal. June 15, 2007) . . . . . . . . . . . . . . . . . 13, 20, 24

*Brewer v. Salyer,*
  2009 WL 1396148 (E.D. Cal. May 18, 2009) . . . . . . . . . . . . . . . . . . . . . 22

*Browder v. Fleetwood Enters., Inc.,*
  2008 WL 4384245 (C.D. Cal. Sep. 4, 2008) . . . . . . . . . . . . . . . . . . . 20, 21

*Corbett v. Superior Court,*
  125 Cal.Rptr.2d 46 (Cal. App. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cortez v. Purolator Air Filtration Products Co.,*
  999 P.2d 706 (Cal. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cruz v. Dollar Tree Stores, Inc.,*
  2009 WL 1458032 (N.D. Cal. May 26, 2009) . . . . . . . . . . . . . . . . . . . 6, 24

*Daugherty v. Am. Honda Motor Co.,*
  51 Cal.Rptr.3d 118 (Cal. App. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Day v. AT&T Corp.,*
  74 Cal.Rptr.2d 55 (Cal. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Del Campo v. American Corrective Counseling Servs., Inc.,*
  254 F.R.D. 585 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . 7, 13, 14

*Eisen v. Carlisle and Jacquelin,*
  417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Engalla v. Permanente Med. Group, Inc.*,
    938 P.2d 903 (Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Farmers Ins. Exchange v. Superior Court*,
    826 P.2d 730 (Cal. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fletcher v. Security Pacific National Bank*,
    591 P.2d 5 (Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re First Alliance Mortg. Co.*,
    269 B.R. 428 (C.D. Cal. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gonzales v. Arrow Fin. Servs., LLC*,
    489 F.Supp.2d 1140 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gutierrez v. Wells Fargo Bank, N.A.*,
    2008 WL 4279550 (N.D. Cal. Sep. 11, 2008) . . . . . . . . . . . . . . . . . . . 22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hewlett-Packard Co. v. Superior Court*,
    83 Cal.Rptr.3d 836 (Cal. App. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hunt v. Check Recovery Sys., Inc.*,
    241 F.R.D. 505 (N.D. Cal. 2007) *modified on other*
    *grounds*, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007),
    *aff'd on other grounds*, 560 F.3d 1137 (9th Cir. 2009) . . . . . . . . 11, 14, 16, 24

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Massachusetts Mut. Life Ins. Co. v. Superior Court*,
    119 Cal.Rptr.2d 190 (Cal. App. 2002) . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Mazza v. American Honda Motor Co.*,
    254 F.R.D. 610 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Molski v. Gleich*,
    318 F.3d 937 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Negrete v. Allianz Life Ins. Co.*,
    238 F.R.D. 482 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 20

*Occidental Land, Inc. v. Superior Court*,
    556 P.2d 750 (Cal. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Parra v. Bashas, Inc.*,
    536 F.3d 975 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

-iv-

*Park v. Ralph's Grocery Co.*,
   254 F.R.D. 112 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Parkinson v. Hyundai Motor America*,
   ___ F.R.D. ___, 2008 WL 5233200 (C.D. Cal. 2008) . . . . . . . . . . . 18, 19, 21

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*,
   128 Cal.Rptr.2d 463 (Cal. App. 2002) . . . . . . . . . . . . . . . . . . . . 18

*People v. Superior Court*,
   507 P.2d 1400 (Cal. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Plascencia v. Lending 1st Mort.*,
   _ F.R.D. _, 2009 WL 2569732 (N.D. Cal. Aug. 21, 2009) . . . . . . . . . . 20

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
   2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) . . . . . . . . . . . . . . . . 14

*Rodriguez v. Hayes*,
   578 F.3d 1032 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . 6, 10, 11, 14

*Sanbrook v. Office Depot, Inc.*,
   2009 WL 840020 (N.D. Cal. Mar. 30, 2009) . . . . . . . . . . . . . . . . . 8

*Shersher v. Superior Court*,
   65 Cal.Rptr.3d 634 (Cal. App. 2007) . . . . . . . . . . . . . . . . . . . . 15

*State v. Levi Strauss & Co.*,
   715 P.2d 564 (Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stuart v. Radioshack Corp.*,
   2009 WL 28194 (N.D. Cal. Feb. 5, 2009) . . . . . . . . . . . . . . . . . . 13

*Tchoboian v. Parking Concepts, Inc.*,
   2009 WL 2169883 (C.D. Cal. Jul. 16, 2009) . . . . . . . . . . . . . . 7, 22, 24

*In re Tobacco II Cases*,
   207 P.3d 20 (Cal. 2009) . . . . . . . . . . . . . . . . . . . . . . . 17-18, 19

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
   2008 WL 413749 (N.D. Cal. Feb. 13, 2008) . . . . . . . . . . . . . . . . . 24

*Walters v. Reno*,
   145 F.3d 1032 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 12, 14

*Westways World Travel, Inc. v. AMR Corp.*,
   218 F.R.D. 223 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . 16

*Yokoyama v. Midland Nat. Life Ins. Co.*,
   __ F.3d __, 2009 WL 2634770 (9th Cir. Aug. 28, 2009) . . . . . . . . . . . 22

-v-

*Zinser v. Accufix Res. Inst.,*
253 F.3d 1180 (9th Cir. 2001), *amended on other grounds,*
273 F.3d 1266 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

### *Statutes*

Bus. & Prof. Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Bus. & Prof Code § 17204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Bus. & Prof. Code § 17500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Civ. Code § 1760 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Civ. Code § 1770 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Civ. Code § 1780 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

28 U.S.C. §1332(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### *Rules*

Fed. R. Civ. P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. P. 23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24-25

### *Treatise*

Charles Allen Wright et al., *Federal Practice & Procedure,*
§ 1784.1 (3d ed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1

**PRELIMINARY STATEMENT**

2        This case involves the ongoing and pervasive misrepresentations and omissions

3    of Defendants Brother-Japan and Brother-US regarding Brother Devices and the

4    Brother Cartridges that supply toner to those devices.  Defendants have perpetrated

5    two interrelated frauds against Class members: (a) the "Empty/Life End Fraud"; and

6    (b) the "Mechanical Limitation Fraud."  By engaging in that misconduct, Defendants

7    violated three remedial statutes designed to provide broad protections to California

8    consumers: the Unfair Competition Law ("UCL," Bus. & Prof. Code § 17200 *et seq.*);

9    the False Advertising Law ("FAL," Bus. & Prof. Code § 17500 *et seq.*); and the

10   Consumers Legal Remedies Act ("CLRA," Civ. Code § 1760 *et seq.*).

11       All Class members were victimized by the Empty/Life End Fraud.  Defendants

12   committed that fraud by programming all Brother Devices to stop printing and to

13   signal "Toner Empty" or "Toner Life End" on their LCD or LED displays although

14   the devices' Brother Cartridges contained sufficient toner to produce hundreds, if not

15   thousands, of additional pages of high-quality print.[1]  By means of these false

16   statements and omissions, Defendants induced Class members to buy Brother Devices

17   and Cartridges ("Brother Products") at inflated prices, prevented Class members from

18   utilizing all of the high-priced Brother toner they purchased and caused Class

19   members to buy replacement Brother Cartridges that they did not need.

20                                Redacted

21

22                                          [2]  That fraud arose from

23

24       [1]  Brother Devices' LED displays consist of colored lights that blink or remain

25   on to signal various information, including that the devices' Brother Cartridges are
     "Low" or "Empty" or have reached their "Life End."  Other Brother Devices utilize
     printed words on their LCD displays to signal the same conditions.

26

27   [2]                                     Redacted

28                                                                    ns in
                                          ]" are to the exhibits to the
                                                                (continued...)

1  Defendants' uniform omissions and false statements regarding Brother Cartridges'

2  page yields, *i.e.*, the number of pages the cartridges would print at 5% toner coverage

3  per page.                                            Redacted

4

5

6          In light of these facts, the Class easily satisfies the four basic class certification

7  requirements of Fed. R. Civ. P. 23(a) – numerosity, commonality, typicality and

8  adequacy.  First, thousands of Class members purchased Brother Products during the

9  Class Period.  Hence, Class members unquestionably qualify as "numerous."

10         Because Defendants engaged in uniform deceptive conduct, the Class also

11 satisfies the Ninth Circuit's permissive "commonality" and "typicality" tests.  While

12 class claims need present only a few common questions to merit certification, the

13 Class's claims involve numerous shared legal and factual issues.  In particular, all

14 Class members' claims hinge upon the shared question of whether Defendants

15 concealed the Empty/Life End and Mechanical Limitation Frauds.  Similarly, because

16 Defendants deceived all Class members by means of the same omissions and false

17 statements, Plaintiffs' claims qualify as typical of those possessed by the Class.

18         Plaintiffs also satisfy Rule 23(a)'s "adequacy" requirement because they and

19 their counsel have faithfully represented the Class, and counsel possesses substantial

20 experience litigating class actions.  Plaintiffs include a former NASA engineer who is

21 now a successful business owner, an accomplished actor, and a lawyer who is now an

22 investment professional.  Hence, they are well qualified to protect the Class.  Counsel

23 have also established their adequacy by developing a damning record regarding

24 Defendants' concealment of the Empty/Life End and Mechanical Limitation Frauds.

25

26   _____

27      [2](...continued)
     Kalcheim Declaration.  Citations in the format "[Last Name] Tr." are to the deposition
     transcripts of the named witnesses.  Citations to "Compl." are to the Amended
28   Complaint in the *Lipper* case (Exhibit 25 to the Kalcheim Declaration).

                                         2

1   To obtain certification, Plaintiffs must also satisfy *one* of Rule 23(b)'s three

2   sub-parts.  This Class qualifies for certification under both Rule 23(b)(2) and Rule

3   23(b)(3).  The Court can certify a Rule 23(b)(2) class because Defendants have "acted

4   or refused to act on grounds that apply generally to the class, so that final injunctive

5   relief . . . is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  In

6   particular, Defendants continue to conceal the Empty/Life End and Mechanical

7   Limitation Frauds.  Thus, an injunction compelling Defendants to cease their

8   deception qualifies as an appropriate, indeed necessary, form of relief.

9   The Court can certify a Rule 23(b)(3) class because the many factual and legal

10   questions common to Class members predominate over questions affecting only

11   individual members, and class-wide adjudication qualifies as the superior means for

12   resolving this dispute.  The Class satisfies the predominance test because the question

13   of whether Defendants' uniform statements were misleading pervades this litigation.

14   Furthermore, in light of the size of the recoveries that Class members can achieve, a

15   class action provides the only logical means for resolving their claims.

16   **THE RELEVANT FACTS**

Redacted

17

18   Brother-US

19   distributes those products through its web site and hundreds of retailers located in

20   California and elsewhere.  Kalcheim Decl. at ¶ 16;   Redacted

21   All Brother

22   Devices produce print by heating and then fusing onto paper the powdered toner that

23   is initially housed in disposable Brother Cartridges.  Wong Decl. at ¶¶ 7-8, 10.  After

24   consumers use as much toner from Brother Cartridges as Brother Devices permit, the

25   consumers must install new Brother Cartridges in their Brother Devices.  *Id.* at ¶ 10.

26   Defendants advertise the page "yield" Brother Cartridges produce on their web

27   sites, in the "User's Guide" that Defendants supply with all new Brother Devices and

28   on the packaging for every Brother Cartridge.  *See* Ex. 21 (summarizing Defendants'

3

1  disclosures regarding the Brother Products' expected yields); Ex. 29 (excerpts from

2  Defendants' web sites); Ex. 31 (Brother packaging);                    Redacted

3  Defendants express that yield as the number of letter-sized pages of print Brother

4  Cartridges will generate at 5% toner coverage per page.                Redacted

5      Consumers cannot discern independently the toner coverage of a printed page.

6  *See* Wong Decl. at ¶ 16.  To the naked eye, however, the 5% standard page appears to

7  generate a large amount of text and graphics.  Ex. 16.

8                                      Redacted

9

10                                                                      Wong

11  Decl. at ¶ 10.[3]  Replacing Brother Cartridges is very expensive relative to the cost of

12  the far more complex Brother Devices because Defendants sell the devices at small

13  margins to create a captive audience for the extraordinary profits Defendants generate

14  through cartridge sales.  Wong Decl. at ¶¶ 8-9.  As a result, Defendants have taken

15  steps to guarantee that consumers must regularly replace their Brother Cartridges

16  irrespective of the cartridges' ability to deliver additional quality print.

17                                      Redacted

18

19

20          Wong Decl. at ¶¶ 20-23.            Redacted

21

22      Yet, testing that Plaintiffs' expert performed after disabling the

23  mechanisms that Defendants use to prevent Brother Devices from exhausting their

24  _____

    [3]                              Redacted

25

26                                   Redacted

27

28  Reda

4

1   toner supply reveals that Brother Cartridges print hundreds, or even thousands, of

2   pages of quality print after they display "Toner Empty" or "Toner Life End" and cease

3   printing.  Wong Decl. at ¶¶ 6, 19-23;                    Redacted

4         Defendants reinforced consumers' belief that Brother Cartridges are "Empty"

5   when Brother Devices state as much by means of the misleading User's Guides that

6   Defendants        Redacted                              Redacted

7                                                                        While the User's

8   Guides' precise wording varies slightly among models, every guide states in words or

9   substance that the "Toner Empty" or "Toner Life End" message signifies that Brother

10  Cartridges' "toner is used up and printing is not possible."  *See* Ex. 21.

11        Defendants also induced Class members to purchase unneeded high-margin

12  Brother Cartridges by imposing the concealed mechanical limitation upon the ability

13  of Brother Cartridges to exhaust their toner supply when used in Newer Brother

14  Devices.                              Redacted

15

16

17

18                                                      Redacted

19

20

21

22                                          Wong Decl. at ¶ 13.

23                              Redacted

24

25

26

27

28

Redacted

By concealing the Empty/Life End and Mechanical Limitation Frauds, Defendants have generated sales of Brother Products that never would have occurred at the prices that prevailed during the Class Period, if at all, had Defendants candidly disclosed the strategies they employed to prevent consumers from utilizing all of the high-priced Brother toner they purchased.  Compl. at ¶¶ 39, 76, 96-97.  In addition, Defendants' unlawful conduct has caused Class members: (a) to discard Brother Cartridges that contained sufficient toner to produce many pages of quality images; and (b) to make premature and additional purchases of high-margin Brother Cartridges that Class members would not have bought if their existing cartridges actually exhausted their toner supply before shutting down.

## ARGUMENT

### I.   THE LIBERAL STANDARDS GOVERNING CLASS CERTIFICATION

To obtain class certification, Plaintiffs must satisfy Rule 23(a)'s four basic requirements and the additional criteria of Rule 23(b)(2) *or* Rule 23(b)(3).  *E.g.*, *Rodriguez v. Hayes*, 578 F.3d 1032, 1047 (9th Cir. 2009).  To satisfy this burden, Plaintiffs need only "provid[e] the court with a *sufficient basis for forming a reasonable judgment on each requirement.*"  *Cruz v. Dollar Tree Stores, Inc.*, 2009 WL 1458032, at *4 (N.D. Cal. May 26, 2009) (emphasis added) (citing *Blackie v.*

---

[4]  Lipper and Argyropoulos are low duty users of their Brother Devices.  *See* Ex. 7 [Lipper Tr.] at 29, 38-39; Ex. 1 [Argyropoulos Tr.] at 12, 66, 124.  Both men have observed that their Brother Cartridges' yields are lower than the yields Defendants advertise.  Ex. 7 [Lipper Tr.] at 71, 82-84; Ex. 1 [Argyropoulos Tr.] at 27, 61, 63, 65, 66, 122-24.  Furthermore, Plaintiff Lipper noticed his Brother Device "warming up" and, therefore, rotating its developer roller without producing any print, on numerous occasions when his dog dislodged the power strip into which Lipper plugged his Brother Device.  Ex. 7 [Lipper Tr.] at 40.

1 | *Barrack,* 524 F.2d 891, 900-01 (9th Cir. 1975)).

2 |     California courts have emphasized that consumer fraud cases are particularly

3 | suited for class adjudication and that courts should apply the UCL, FAL and CLRA

4 | flexibly to protect consumers from unfair or deceptive conduct.[5] Thus, "[a]ny doubts

5 | a court has about class certification should be resolved in favor of certification."[6]

6 |     Defendants cannot prevent class certification by attacking the merits of

7 | Plaintiffs' claims.[7] Rather, the relevant analysis focuses upon whether the class

8 | satisfies Rule 23's requirements. *Eisen,* 417 U.S. at 177. In making that assessment,

9 | "[t]he court is bound to take the substantive allegations of the complaint as true."[8]

10 | The Court may also consider the parties' "'supplemental evidentiary submissions

11 | . . .'" *Baghdasarian,* 258 F.R.D. at 386 (citation omitted).

12 | **II.    THE CLASS SATISFIES ALL REQUIREMENTS FOR CERTIFICATION PURSUANT TO RULE 23(b)(2) AND RULE 23(b)(3)**

13 |

14 |     **A.    The Class Satisfies Each Requirement Of Rule 23(a)**

15 |         **1.    The Class Satisfies Rule 23(a)'s Numerosity Requirement**

16 |     The numerosity requirement is met when the class members are "so numerous

---

17 |

18 |     [5] *E.g., del Campo v. American Corrective Counseling Servs., Inc.,* 254 F.R.D. 585, 596 (N.D. Cal. 2008) ("'Predominance is a test readily met in certain cases alleging consumer . . . fraud.'") (quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625 (1997)); *Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged'") (citation omitted); *State v. Levi Strauss & Co.,* 715 P.2d 564, 570 (Cal. 1986) ("the California courts have recognized that the consumer class action is an essential tool for the protection of consumers against exploitative business practices").

22 |

23 |     [6] *Baghdasarian v. Amazon.com, Inc.,* 258 F.R.D. 383, 386 (C.D. Cal. Jul. 7, 2009); *accord, e.g., Gonzales v. Arrow Fin. Servs., LLC,* 489 F.Supp.2d 1140, 1154 (S.D. Cal. 2007).

24 |

25 |     [7] *E.g., Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Tchoboian v. Parking Concepts, Inc.,* 2009 WL 2169883, at *2 (C.D. Cal. Jul. 16, 2009) (in analyzing class certification issues, "a trial court is not permitted to make a preliminary inquiry into the merits").

28 |     [8] *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975); *accord, e.g., Baghdasarian,* 258 F.R.D. at 386 (quoting *Blackie*).

1    that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

2    "'[I]mpracticability does not mean impossibility,' but simply that joinder of all class

3    members must be difficult or inconvenient."[9]  Courts in this Circuit have held

4    repeatedly that classes of 40 or more satisfy the numerosity requirement.[10]

5                                        Redacted

6

7

8

9

10

11

12          These facts – which Plaintiffs learned although the parties agreed to defer

13   financial discovery – confirm Plaintiffs' allegations that the Class numbers well into

14   the thousands and negate any numerosity challenge Defendants advance. *See* Compl.

15   at ¶¶ 17-18, 22.  Indeed, any such challenge would constitute hypocrisy because

16   Brother-US removed this action and invoked the Court's jurisdiction under 28 U.S.C.

17   §1332(d)(2) by arguing that the amount in controversy exceeds $5 million.[11]

18              **2.    Class Members' Claims Present**
                         **Common Questions Of Law And Fact**
19
20          To establish commonality, Plaintiffs need only demonstrate that "'there are

21   questions of fact and law which are common to the class.'"  *Hanlon v. Chrysler Corp.*,

22   150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(2)).  "The

23
24          [9]  *Baghdasarian*, 258 F.R.D. at 388 (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964)).

25          [10]  *E.g., Mazza v. American Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal.
26   2008) ("As a general rule, classes of forty or more are considered sufficiently
     numerous."); *Alba v. Papa John's USA, Inc.*, 2007 WL 953849, at *5-6 (C.D. Cal.
     Feb. 7, 2007) (class with 46 members satisfied numerosity requirement).
27
28          [11]  *See* Ex. 18 (removal petition); *Sanbrook v. Office Depot, Inc.*, 2009 WL
     840020, at *4 (N.D. Cal. Mar. 30, 2009) (defendant's statements in Notice of
     Removal established numerosity).

                                        8

commonality requirement is generally construed liberally; the existence of only a few common legal and factual issues may satisfy the requirement." *Negrete v. Allianz Life Ins. Co.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006). "All questions of fact and law need not be common to satisfy this rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

The Class easily satisfies this "permissive[]" standard. *Hanlon*, 150 F.3d at 1019. The crux of all Class members' claims is that Defendants misrepresented and omitted material facts concerning Brother Products' printing capacity. Compl. at ¶¶ 53, 56, 74-79; pp. 1-6, *supra*. For all Class members, those claims raise numerous common factual and legal issues related to whether the uniform "Toner Empty" and "Toner Life End" representations qualify as misleading. *See* Ex. 21. Plaintiffs will prove those claims by establishing that, at the time Brother Devices produced the false signals, *all* Brother Cartridges: (a) contained a high percentage of their toner; (b) remained capable of printing hundreds, if not thousands, of additional pages; and (c) ceased printing as a result of the readings generated by the optical scanners or mechanical limitation that worked in a uniform manner in all Brother Devices.[12]

Redacted

---

[12] *See* Ex. 21 (summarizing Defendants' disclosures); Compl.          Redacted

Redacted

All of these common facts are also critical to the shared legal issue of whether Defendants' disclosures and omissions constituted violations of the UCL, the FAL and the CLRA. *See* Compl. at ¶¶ 23, 87-113. Hence, this case presents numerous and pervasive common issues of law and fact that more than suffice to satisfy the Ninth Circuit's "permissive[]" commonality standard. *Hanlon*, 150 F.3d at 1019.[14]

### 3. Plaintiffs' Claims Are Typical Of Those Of The Absent Members Of The Class

"The typicality prerequisite of Rule 23(a) is fulfilled if 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Hanlon*, 150 F.3d at 1020 (quoting Fed. R. Civ. P. 23(a)(3)). The "requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez*, 578 F.3d at 1059 (quoting *Hanlon*, 150 F.3d at 1020). Thus, typicality may exist even where the claims of the named plaintiffs and absent class

---

[13]                                              Redacted

[14]   *Accord, e.g., Rodriguez*, 578 F.3d at 1048-49 (shared question of whether prolonged detention under immigration statutes was constitutionally permissible satisfied commonality requirement although individual issues existed concerning which statute the government relied upon to detain particular class members and the nature of the conduct that allegedly justified the detention); *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (commonality satisfied in case involving discriminatory pay scales at three supermarkets that shared common ownership because "a proposed class can consist of members with widely differing experiences as they relate to the case [who] seek a common remedy for a common policy of discrimination"); *Blackie*, 524 F.2d at 902-05 (commonality satisfied in securities fraud case involving false statements issued over 27 months in numerous SEC filings and press releases that concerned multiple aspects of the defendant's financial results); *In re First Alliance Mortg. Co.*, 269 B.R. 428, 447 (C.D. Cal. 2001) (commonality requirement satisfied with respect to claims that lender marketed loans through standard "tracks" that included misleading statements because, "[a]lthough [the defendant] argues that there were many variations of these tracks, the key issue is whether the sales pitches varied in any material way").

1    members involve different facts.[15]

2         Applying these precedents yields the inescapable conclusion that Plaintiffs

3    qualify as typical.  Like all Class members, each Plaintiff purchased a Brother Device

4    or Brother Cartridge.  *See* Ex. 1 [Argyropoulos Tr.] at 22; Lipper Decl. at ¶ 3; Ex. 5

5    [Kandel Tr.] at 18-21, 51.[16]  Thus, Plaintiffs will establish their own claims *and* those

6    of absent Class members by proving at trial that Defendants: continually made false

7    statements that Brother Cartridges were "Empty" or had reached their "Life End" (*see*

8    Ex. 21); concealed the material fact that the supposedly "Empty" cartridges could

9    print hundreds or thousands of additional pages (*see* Ex. 21; Wong Decl. at ¶¶ 20-23);

10   misleadingly disclosed the yields of Brother Cartridges while concealing the

11   mechanical limitation (*see* Ex. 21;                 Redacted                ); and continue to

12   this day to conceal the Empty/Life End and Mechanical Limitation Frauds    Redacted

13

14        In light of these pervasive similarities between the facts that establish the claims

15   of Plaintiffs *and* absent Class members, Defendants cannot mount a credible typicality

16   challenge.  Indeed, courts have consistently rejected typicality attacks in cases

17   involving less convincing showings that the named plaintiffs would establish class

18   members' entitlement to relief by proving the plaintiffs' own claims.[17]

19   ───────────────

20        [15] *E.g., Staton v. Boeing Co.,* 327 F.3d 938, 957 (9th Cir. 2003) (claims need
     not "'be identical or substantially identical to those of the absent class members'")

21   (citation omitted); *Hunt v. Check Recovery Sys., Inc.,* 241 F.R.D. 505, 511 (N.D. Cal.
     2007) ("Factual variations among class members' grievances do not defeat

22   [typicality]."), *modified on other grounds,* 2007 WL 2220972 (N.D. Cal. Aug. 1,
     2007), *aff'd on other grounds,* 560 F.3d 1137 (9th Cir. 2009).

23        [16] Lipper's one-man company, Northern Productions, Inc., has moved to
24   intervene as a plaintiff to resolve any standing issues related to the purchase of his
     MFC-7420 because Plaintiffs' counsel learned at the Lipper deposition that Northern
25   Productions reimbursed Lipper for the Brother Device that Lipper purchased. Ex. 7
     [Lipper Tr.] at 23-24.

26        [17] *E.g., Rodriguez,* 578 F.3d at 1049-50 (claims that prolonged detention
27   without bond hearing pursuant to various immigration statutes violated detainees'
     Constitutional rights satisfied typicality requirement even though the plaintiff "and
28   some of the other members of the proposed class are detained under different statutes
                                                                         (continued...)

                                          11

### 4. Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

Adequacy determinations turn upon two issues: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.[18] No such conflicts exist here because Plaintiffs will establish all Class members' claims by proving the Mechanical Limitation and Empty/Life End Frauds. *See* Point II.A.2, *supra*; Compl. at ¶¶ 24-25, 28. Moreover, counsel have every incentive to advance the interests of all Class members. Compl. at ¶ 25; Ex. 7 [Lipper Tr.] at 107-08 (counsel are representing the Class on a contingent basis); Ex. 1 [Argyropoulos Tr.] at 121 (same). Thus, neither Plaintiffs nor counsel face the type of serious conflict that could undermine their adequacy.

Plaintiffs have also already demonstrated their commitment to prosecuting Class members' claims. They have produced documents, served responses to numerous written discovery requests and sat for their depositions. Ex. 5 [Kandel Tr.] at 1, 4; Ex. 7 [Lipper Tr.] at 1, 5, 15, 47; Ex. 1 [Argyropoulos Tr.] at 1, 12, 14, 49. Plaintiffs' testimony also evidences their familiarity with the Class's claims and their

---

[17](...continued)
and are at different points in the removal process and hence do not raise identical claims" because all class members "raise[d] similar constitutionally-based arguments and are alleged victims of the same practice of prolonged detention while in immigration proceedings"); *Baghdasarian*, 258 F.R.D. at 389 (typicality satisfied where all class members' claims "arise from the same course of events – Amazon's uniform disclosures regarding the shipping and handling fees it charges [class members]" – despite the defendant's contention that resolution of class members' claims required the examination of individual issues concerning their knowledge of Amazon's shipping policies); *Mazza*, 254 F.R.D. at 619 (in UCL and CLRA case, typicality satisfied where "Plaintiffs' and the proposed class members' claims all arise from Honda's alleged omission of the [automobile's braking system's] limitations, giving rise to the same, class-wide injury type"); *Negrete*, 238 F.R.D. at 488 (typicality satisfied with respect to UCL claims that defendant induced senior citizens to purchase deferred annuities by misrepresenting the essential characteristics of those investment products in "'consumer brochures'" and other documents).

[18] *Accord, e.g., Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) ("Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'") (citation omitted).

1   responsibilities to absent Class members.  *See* Ex. 5 [Kandel Tr.] at 78; Ex. 7 [Lipper

2   Tr.] at 106-07; Ex. 1 [Argyropoulos Tr.] at 116, 121.

3          Plaintiffs are also well qualified to supervise counsel's litigation efforts.

4   Argyropoulos, a successful business owner, holds a masters degree and formerly

5   worked as a NASA engineer.  Ex. 1 [Argyropoulos Tr.] at 17-18.  Lipper is a

6   successful actor with a Fine Arts degree who demonstrated his strong disapproval of

7   Defendants' deception at his deposition.  Ex. 7 [Lipper Tr.] at 16, 82.  Finally, Kandel

8   is a lawyer and investment professional.  Ex. 5 [Kandel Tr.] at 12, 17.  In similar

9   circumstances, courts have consistently found plaintiffs adequate.[19]

10          Defendants also cannot credibly challenge counsel's adequacy.  Counsel have a

11   long track record of successful results in class actions and other complex litigations.

12   Kalcheim Decl. at ¶¶ 54-56; Bonner Decl. at ¶¶ 3-8 and Ex. A.  In addition, counsel

13   have expended significant resources investigating the Class's claims, briefing

14   numerous issues, working with multiple experts, and conducting significant discovery,

15   often on tight deadlines.  Kalcheim Decl. at ¶¶ 2-15.  Thus, counsel's performance and

16   commitment satisfy Rule 23(a)'s minimal adequacy standard.[20]

17

18   [19]  *E.g., Stuart v. Radioshack Corp.*, 2009 WL 281941, at *10 (N.D. Cal. Feb. 5,
     2009) (plaintiff need only demonstrate a "basic understanding of the case" to satisfy
19   the adequacy requirement); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110-11 (N.D.
     Cal. 2008) (rejecting adequacy challenge where "both [plaintiffs] have been deposed
20   twice and have demonstrated familiarity with the underlying theory of the case: that
     Defendants acted imprudently as guardians of the Plan's assets"); *del Campo*, 254
21   F.R.D. at 594 (rejecting as "perplexing" adequacy challenge where plaintiffs allegedly
     were "ignorant of the legal matters at issue, [were] fed information by their lawyers,
22   and generally leave their lawyers to run the case" because "Plaintiffs are lay people
     who are not authorized to practice law and thus would not be required to know the
23   'legal matters' at issue"); *Alba*, 2007 WL 953849, at *9 ("The adequacy of a putative
     class representative does not depend on his legal knowledge or on whether he knows
24   all the facts about the class as a whole.").

25   [20]  *E.g., Mazza*, 254 F.R.D. at 619 (adequacy satisfied where counsel "invested
     considerable time . . . garnering evidence, formulating legal theories, reviewing
26   thousands of pages of documents, and taking numerous depositions" and declaration
     evidenced that counsel were "experienced in both consumer law and class action
27   litigation"); *Bristow v. Lycoming Engines*, 2007 WL 1752602, at *5 (E.D. Cal. June
     15, 2007) (counsel adequate where "[t]hey possess experience handling class actions
28   and other complex litigation, . . . expended significant effort investigating potential

                                                                            (continued...)

                                             13

**B.      The Class Meets The Rule 23(b)(2) And
           23(b)(3) Requirements For Certification**

    **1.      Certification Is Appropriate Pursuant To Rule 23(b)(2)
            Because Defendants Have Acted And Refrained From Acting
            In A Manner That Applies Generally To All Class Members**

To obtain certification pursuant to Rule 23(b)(2), Plaintiffs must establish Rule 23(a)'s requirements and show that "the part[ies] opposing the class [have] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[21] "'Class certification under Rule 23(b)(2)' requires that 'the primary relief sought is declaratory or injunctive.'"[22] Notably, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 578 F.3d at 1051. Moreover, "'questions of manageability and judicial economy are . . . irrelevant to 23(b)(2) class actions.'" *Id.* (citation omitted). On the other hand, cases involving deceptive disclosures to consumers often qualify for class certification pursuant to Rule 23(b)(2).[23]

_____

[20](...continued)
claims and developing legal theories to support those claims, and appear familiar with the applicable laws").

   [21]   *See also, e.g., Rodriguez*, 578 F.3d at 1051 (the court should "look at whether class members seek uniform relief from a practice applicable to all of them"); *Walters*, 145 F.3d at 1047 (under Rule 23(b)(2), "it is sufficient" that "class members complain of a pattern or practice that is generally applicable to the class as a whole").

   [22]   *Rodriguez*, 578 F.3d at 1047 (quoting *Zinser v. Accufix Res. Inst.*, 253 F.3d 1180, 1195 (9th Cir. 2001), *amended on other grounds*, 273 F.3d 1266 (9th Cir. 2001)); *accord Hunt*, 241 F.R.D. at 509 ("Rule 23(b)(2) actions are common where injunctive or declaratory relief is the primary relief sought on behalf of the class.").

   [23]   *See, e.g., Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 WL 4906433, at *4-5 (C.D. Cal. Nov. 13, 2008) (certifying Rule 23(b)(2) class where defendant allegedly made false representations on labels concerning product's contents); *del Campo*, 254 F.R.D. at 595 (certifying Rule 23(b)(2) class where "a primary goal of this litigation is to stop Defendants from engaging in their allegedly unlawful debt collection practices" involving the mailing of allegedly unlawful letters to class members); 7AA Charles Alan Wright et al., *Federal Practice & Procedure*, § 1784.1 (3d ed. 2005) ("a class action to enjoin defendant's deceptive advertising,

(continued...)

1   While Plaintiffs intend to continue their pursuit of a monetary recovery for the

2   Class, the injunctive remedies they seek qualify as the predominant form of requested

3   relief.[24]   That injunctive relief will require Defendants to undertake significant efforts

4   to correct their longstanding and ongoing omissions and false statements.  *See* Ex. 21;

5   pp. 1-6, *supra*.  Specifically, Plaintiffs seek to require Defendants: (a) to inform Class

6   members of the Empty/Life End and Mechanical Limitation Frauds; (b) to correct the

7   uniform misrepresentations and omissions in the User's Guides concerning the

8   significance of the Toner Low, Toner Empty and Toner Life End messages; and (c) to

9   disclose the mechanical limitation and the fact that Brother Devices stop printing long

10  before they exhaust Brother Cartridges' toner supply in the packaging for Brother

11  Products, in the User's Guides and in any public disclosure of the supposed yield of

12  Brother Cartridges.  Compl. at ¶¶ 98, 106, 113.

13  To say the least, this injunctive relief will require Defendants to undertake

14  extensive corrective efforts that will benefit existing *and* future users of Brother

15  Products.  That relief will significantly impact Defendants' marketing of Brother

16  Products because – as things currently stand – Defendants' omissions and false

17  statements facilitate the sale of those products at inflated prices.  Compl. at ¶¶ 10-12.

18

---

19  [23](...continued)

20  may be brought under Rule 23(b)(2) since defendant's conduct generally affects the aggrieved class – the competitors – and injunctive relief is being sought").

21  [24]  As a result of the dismissal of Plaintiffs' CLRA damages claim, Plaintiffs no

22  longer seek damages from Defendants.  Plaintiffs continue to seek monetary relief in the form of restitution and the disgorgement of the profits derived by Defendants from

23  the Empty/Life End and Mechanical Limitation Frauds. *See* Compl. at ¶¶ 98, 106, 113 and pp. 28-29; *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 715

24  (Cal. 2000) (under the UCL, courts maintain the "equitable power" "to order restoration of money to the victim" and "'to restore to any person in interest any

25  money or property, real or personal, which may have been acquired by means of any [unlawful] practice'") (quoting *People v. Superior Court*, 507 P.2d 1400, 1402 n.1

26  (Cal. 1973)); *Corbett v. Superior Court*, 125 Cal.Rptr.2d 46, 49 (Cal. App. 2002) ("[A] plaintiff in a class UCL action is expressly entitled to an injunction and

27  restitution, authorized under the UCL, and to disgorgement into a fluid recovery, as authorized under the class action statutes."); *Fletcher v. Security Pacific Nat'l Bank*,

28  591 P.2d 51, 55 (Cal. 1979) (successful FAL plaintiffs are entitled to "restitution to effect complete justice."); *Shersher v. Superior Court*, 65 Cal.Rptr.3d 634, 637 (Cal. App. 2007) ("The UCL, CLRA, and FAL all provide for restitution.").

15

1          Redacted

2

3          .[25] Hence, a clear need exists for the Court to exercise

4    its equitable powers.

5          Indeed, this case qualifies as a quintessential Rule 23(b)(2) class action because:

6    (a) Defendants continue to deceive the Class in a uniform fashion; and (b) Plaintiffs

7    primarily seek equitable relief forcing Defendants to cease that illicit conduct.  Courts

8    have consistently certified Rule 23(b)(2) classes where plaintiffs sought equitable and

9    monetary relief comparable to the remedies Plaintiffs pursue here, particularly where

10   the injunction would produce future benefits for classes.[26]

11

12

13   _____
     [25]                                        Redacted

14

15

16   [26] *E.g., Park v. Ralph's Grocery Co.*, 254 F.R.D. 112, 123 (C.D. Cal. 2008)
     (certifying class of disabled persons pursuant to Rule 23(b)(2) although total amount
17   of monetary relief sought far exceeded funds required to remediate barriers to
     accessibility because "plaintiffs have shown that defendant acted on grounds generally
18   applicable to the class" and the "'essential goal' of this litigation and plaintiffs'
     primary intent is to obtain injunctive relief to remove the access barriers at
19   defendant's stores"); *Hunt*, 241 F.R.D. at 512-13 (certifying Rule 23(b)(2) class
     despite request for actual and statutory damages where: (a) "the declaratory relief
20   requested will affect more persons and have consequences over a greater period of
     time than monetary damages" and "would settle the issue of the legality of
21   Defendant's behavior with respect to the entire class"; (b) "Plaintiffs' monetary
     damages, and those of the putative class, all flow directly from the demand letters sent
22   by Defendant and are therefore secondary to the claim for declaratory relief"; and
     (c) the damages were less than the value of the requested declaratory relief); *Westways
23   World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 241-42 (C.D. Cal. 2003)
     (certifying RICO claims pursuant to Rule 23(b)(2) where travel agencies alleged that
24   airline engaged in fraud and extortion by demanding that travel agencies pay large
     penalties when they utilized certain ticketing strategies because plaintiffs alleged their
25   entitlement to declaratory relief deeming the airline's tactics unlawful and the
     "gravamen of Plaintiffs' complaint is that defendants had no contractual or other legal
26   basis for issuing the subject Debit Memos and pursuing collection efforts thereafter");
     *Ballard*, 186 F.R.D. at 596 (certifying class pursuant to Rule 23(b)(2) where plaintiff
27   sought declaratory and injunctive relief prohibiting defendants from demanding
     payment of allegedly unlawful $20 service charge in collection letters because "[t]he
28   declaratory and injunctive relief requested will affect more persons and have
     consequences over a greater period of time than monetary damages").

16

2.   **Certification Is Appropriate Pursuant To Rule 23(b)(3) Because Common Questions Of Law Or Fact Predominate Over Individual Questions**

a.   **Rule 23(b)(3)'s Basic Requirements**

The fact that certification is appropriate pursuant to Rule 23(b)(2) does not prevent the Court from electing to certify a Rule 23(b)(3) class or a "hybrid" of the two.[27] To justify certification pursuant to Rule 23(b)(3), "common questions must predominate over any questions affecting only individual members, 'and class resolution must be superior to other available methods for the fair and efficient adjudication of claims.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)). Rule 23(b)(3) requires only that common issues predominate, not that all issues be common to the class. A class satisfies the predominance requirement "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication . . ." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted). The Supreme Court has emphasized that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

b.   **Common Issues Predominate With Respect To The UCL And FAL Claims**

Assessing whether common issues predominate in this case requires some consideration of the elements Plaintiffs must prove to establish their claims. The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code § 17200. Thus, to establish a UCL claim, a plaintiff need only establish that the defendant's conduct was "unlawful," "unfair" *or* "fraudulent" or that an advertisement was unfair, deceptive, untrue *or* misleading   *E.g., In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal.

---

[27] *E.g., Molski v. Gleich*, 318 F.3d 937, 951 n.16 (9th Cir. 2003) ("(1) the District Court could have certified the class under Rule 23(b)(3); (2) the District Court could have bifurcated the claims and certified the class under Rule 23(b)(2) and (b)(3); or (3) the District Court could have certified the class under Rule 23(b)(2), giving the class members the right to opt-out under its discretionary authority as provided in Rule 23(d)(2)").

2009).  Similarly, the FAL makes it unlawful for defendants to make a statement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" in connection with the sale of any product. Bus. & Prof. Code § 17500.

The "unlawful" prong of the UCL "'borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder.'"[28]  Disclosures violate the UCL's "unfairness" prong if they are not easily understood by consumers.[29]

Conduct qualifies as "fraudulent" under the UCL if "members of the public are likely to be deceived" by the defendant's actions. *Tobacco II*, 207 P.3d at 29 (citations and internal quotation marks omitted).[30]  Thus, even "[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable.[31]

As a result of the 2004 amendments to Bus. & Prof. Code § 17204, the named plaintiffs – and only the named plaintiffs – in class actions must show that they relied upon defendants' omissions or false statements and that the defendants' conduct caused the plaintiffs' loss. *Tobacco II*, 207 P.3d at 31-36.  Critically, the Supreme

---

[28]  *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 128 Cal.Rptr.2d 463, 469 (Cal. App. 2002) (quoting *Farmers Ins. Exchange v. Superior Court*, 826 P.2d 730, 734 (Cal. 1992)).

[29]  *E.g., Fremont Life*, 128 Cal.Rptr.2d at 471-72 ("The likely difficulty a consumer would experience in attempting to ascertain the financial impact of the 'premium charge' of appellant's annuity policy is *unfair* in the sense of a 'deceptive or sharp practice . . .'") (citation omitted).

[30]  *Accord, e.g., Parkinson v. Hyundai Motor America*, __ F.R.D. __, 2008 WL 5233200, at *16 (C.D. Cal. 2008) (to establish that a defendant's conduct qualifies as fraudulent under the UCL, the plaintiff need "show only that 'members of the public are likely to be deceived'") (citation omitted).

[31]  *Day v. AT&T Corp.*, 74 Cal.Rptr.2d 55, 60 (Cal. App. 1998); *accord, e.g., Fremont*, 128 Cal.Rptr.2d at 472 ("The fact that the information about the premium charge was 'not conspicuously set forth in the policy' and that the policy was 'likely to deceive' also brings this set of circumstances within the *fraud* prong of section 17200.").

18

1   Court also held in *Tobacco II* that the UCL amendments did not alter the rule that "'a

2   presumption, or at least an inference, of reliance arises wherever there is a showing

3   that a misrepresentation was material.'" *Id.* at 39 (citation omitted). Substantial

4   precedent also dictates that plaintiffs and class members benefit from a presumption of

5   reliance upon material omissions.[32]   Furthermore, the UCL amendments did not alter

6   the rule that "relief under the UCL is available without individualized proof of

7   deception, reliance and injury" by absent class members. *Id.* at 35.[33]

8       At trial, Plaintiffs will prove that Defendants have violated and continued to

9   violate every prong of § 17200 of the UCL and § 17500 of the FAL. Defendants

10  conduct is "unlawful" because, as explained in Point II.B.2.c., their false statements

11  and omissions violated the CLRA. *See also* Compl. at ¶¶ 87-100. Furthermore, the

12  Empty/Life End and Mechanical Limitation Frauds qualify as "unfair," "deceptive,"

13  "untrue," "misleading" and "fraudulent" under the UCL and the FAL because: (a)

14  Defendants' omissions and false statements are objectively misleading; (b) Plaintiffs

15  had no inkling until shortly before they asserted their claims that Defendants were

16  engaging in the concealed Empty/Life End and Mechanical Limitation Frauds; and

17  (c) Lipper and Argyropoulos were victimized by the Mechanical Limitation Fraud.[34]

18

19   [32]  *See, e.g., Occidental Land, Inc. v. Superior Court*, 556 P.2d 750, 754 (Cal.
     1976) (inference of reliance appropriate on a class-wide basis where defendant
20   provided a written report to home purchasers showing the supposed maintenance costs
     for common areas and facilities, but failed to disclose substantial costs the defendant
21   had been subsidizing); *Massachusetts Mut. Life Ins. Co. v. Superior Court*, 119
     Cal.Rptr.2d 190, 197-99 (Cal. App. 2002) ("*Mass Mutual*") (inference of reliance and
22   causation appropriate with respect to class of 33,000 people who, over the course of
     15 years, purchased life insurance policies based upon oral representations that a
23   discretionary dividend paid on accrued premiums would eventually become large
     enough to pay the annual premium where plaintiffs alleged that defendant failed to
24   disclose that it would not maintain its then-high discretionary dividend rate).

25   [33]  *Accord, e.g., Parkinson*, __ F.R.D. at __, 2008 WL 5233200, at *16 ("A
     violation of the UCL may be proven 'even without allegations of actual deception,
26   reasonable reliance, and damage.'") (quoting *Daugherty v. Am. Honda Motor Co.*, 51
     Cal.Rptr.3d 118, 128 (Cal. App. 2006)).

27   [34]  *See* Compl. at ¶¶ 1,16, 81-86; pp. 1-6, *supra*; Ex. 7 [Lipper Tr.] at 82-84; Ex.
28   1 [Argyropoulos Tr.] at 12, 66, 124; Ex. 5 [Kandel Tr.] at 76, 83-84, 86, 93; Lipper

(continued...)

19

As Plaintiffs established in connection with their discussion of Rule 23(a)'s commonality requirement, all of these claims relate to the uniform disclosures that Defendants made and continue to make on Brother Devices' LED and LCD displays, in the User's Guides and on the packaging for Brother Cartridges. *See* Ex. 21; Compl. at ¶¶ 33-40, 51-62. Thus, it is difficult to discern *any* liability issue that Class members do not share. The California precedent that renders deception, reliance and causation issues objective matters subject to class-wide proof therefore effectively precludes any challenge to predominance with respect to the UCL and FAL claims.[35]

### c. Common Issues Predominate With Respect To The CLRA Claim

To establish their CLRA claims, Class members must demonstrate that they "suffer[ed] . . . damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by" Civ. Code § 1770. Civ. Code

---

[34](...continued)
Decl. at ¶¶ 3-4; Argyropoulos Decl. at ¶¶ 3-4.

[35] *E.g., Plascencia v. Lending 1st Mort.,* __ F.R.D. __, 2009 WL 2569732, at *9 (N.D. Cal. Aug. 21, 2009) (common issues predominated with respect to common law fraud and UCL claims where defendant "acted in a uniform way toward all class members – here, by supplying class members with loan documents that failed to state in clear language material terms of the loan"); *Mazza,* 254 F.R.D. at 627 (common issues predominated with respect to UCL claim based upon failure to disclose alleged limitations upon car's braking system even though "the information about the limitations . . . may have been available in some media"); *Browder v. Fleetwood Enters., Inc.,* 2008 WL 4384245, at *5-7 (C.D. Cal. Sep. 4, 2008) (predominance requirement satisfied with respect to UCL claim related to defendant's false representations concerning the heat resistance of the insulation utilized in its manufactured homes although homes were built in numerous plants, some homes did contain the promised amount of insulation, and "each home [was] different in size, design, type of insulation, and [heat resistance] specifications" because the plaintiffs alleged that the defendant maintained a uniform improper standard for determining the insulation's heat resistance); *Bristow,* 2007 WL 1752602, at *6 (predominance requirement satisfied with respect to UCL claim involving alleged omission of material facts concerning airplane part where common issues included whether the part was "unsafe, whether defendants had a duty to disclose information regarding the allegedly unsafe nature and substandard testing of the [part], whether the information was material, and whether defendant engaged in unfair or unlawful practices"); *Negrete,* 238 F.R.D. at 491-92 (predominance requirement satisfied with respect to UCL claim that defendant induced senior citizens to purchase disadvantageous deferred annuities by misrepresenting the essential characteristics of those investment products in "'consumer brochures'" and other documents where the defendant's agents made "standardized written presentations").

20

1  § 1780.[36] Thus, class members must show "that a defendant's conduct was deceptive

2  [and] that the deception caused them harm." *Mass. Mutual*, 119 Cal.Rptr.2d at 197.

3  Where – as is true here – a defendant makes a false representation or omission, the

4  causation the CLRA requires "'as to each class member is commonly proved more

5  likely than not by materiality.'" *Id.* at 197 (quoting *Blackie*, 524 F.2d at 907 n.22).

6  Indeed, once "materiality is shown, reliance and causation may be presumed as to the

7  entire class." *Parkinson*, __ F.R.D. at __, 2008 WL 5233200, at *15.

8       The facts Defendants omitted and misrepresented in connection with the

9  Empty/Life End and Mechanical Limitation Frauds undeniably qualify as material.[37]

10  Hence, the CLRA's causation requirement creates no individual issues that pose an

11  obstacle to a predominance finding. In fact, the case law convincingly supports the

12  conclusion that common issues of law and fact predominate with respect to Plaintiffs'

13  CLRA claim.[38] Moreover, courts have consistently found that common issues of law

14

15  [36] Defendants committed the following CLRA violations: (a) representing that
Brother Products have characteristics, uses, benefits, and quantities that they do not

16  have (Civ. Code § 1770(a)(5)); (b) representing that Brother Products are of a
particular standard, quality, or grade although they are of another (Civ. Code

17  § 1770(a)(7)); (c) advertising Brother Products for sale with the intent not to sell them
as advertised (Civ. Code § 1770(a)(9)); and (d) falsely representing that Class

18  members needed parts or replacements (*i.e.*, new Brother Cartridges) when they did
not in fact need those new cartridges (Civ. Code § 1770(a)(15)).

19       [37] *E.g.*, *Engalla v. Permanente Med. Group, Inc.*, 938 P.2d 903, 919 (Cal.

20  1997) (fact is "'material' if 'a reasonable man would attach importance to its existence
or nonexistence in determining his choice of action in the transaction in question'. . .

21  and as such materiality is generally a question of fact unless the 'fact misrepresented
is so obviously unimportant that the jury could not reasonably find that a reasonable

22  man would have been influenced by it'") (citations omitted).

23       [38] *E.g.*, *Parkinson*, __ F.R.D. at __, 2008 WL 5233200, at *15 (predominance
satisfied with respect to CLRA claim based upon failure to disclose defect impacting

24  automobile's transmission); *Mazza*, 254 F.R.D. at 626 (predominance satisfied with
respect to CLRA claim based upon failure to disclose alleged limitations upon car's

25  braking system although "the information about the limitations . . . may have been
available in some media"); *Browder*, 2008 WL 4384245, at *5-7 (predominance

26  satisfied with respect to CLRA claim related to false representations concerning the
heat resistance of the insulation utilized in manufactured homes although homes were

27  built in numerous plants, some homes did contain the represented amount of
insulation, and each home was different in terms of size, design, type of insulation,

28  and heat resistance "because the common issue of [defendant's] defective instruction

(continued...)

1   and fact predominated with respect to claims that presented far more significant

2   individual issues than do the claims Plaintiffs assert on behalf of the Class.[39]

3       The recent decision in *Yokoyama v. Midland Nat. Life Ins. Co.*, __ F.3d __,

4   2009 WL 2634770 (9th Cir. Aug. 28, 2009) illustrates the futility of any

5   predominance challenge Defendants attempt to mount.  In *Yokoyama*, annuity

6   investors asserted class claims for violations of Hawaii's Deceptive Practices Act.

7   That statute, like the CLRA and the UCL, does not require reliance by plaintiffs.

8   Rather, plaintiffs need only prove that the deceptive practice is "'likely to mislead

9   consumers acting reasonably under the circumstances.'" *Id.* at *1.  In assessing

10  predominance, the *Yokoyama* court emphasized that the plaintiffs' claims turned upon

11  the "allegedly deceptive provisions of [the defendant's] own marketing brochures."

12  *Id.*  As a result, the court held that common issues predominated because "the

13  _____

    [38](...continued)

14  [regarding insulation procedures] is the central issue of plaintiffs' case");
    *Hewlett-Packard Co. v. Superior Court*, 83 Cal.Rptr.3d 836, 842-43 (Cal. App. 2008)

15  (common issue of whether "inverters" that caused computers' monitors to dim were
    defective predominated in CLRA and UCL case although class members purchased

16  multiple computer models utilizing two different inverters).

17      [39] *See, e.g., Hanlon,* 150 F.3d at 1022-23 (predominance satisfied in case
    involving claims related to vehicle's defective rear liftgate latch although class

18  members' experiences with latch varied greatly and plaintiffs asserted claims under
    the law of all fifty states); *Tchoboian,* 2009 WL 2169883, at *7 (predominance

19  satisfied where defendant violated statute regarding the content of credit card receipts
    although the "Court recognize[d] that there may be some difficulty in determining

20  who received noncompliant receipts" because "the bulk of this action surrounds
    allegations regarding [the defendant's] conduct"); *Bibo v. Federal Exp., Inc.,* 2009

21  WL 1068880, at *13-14 (N.D. Cal. Apr. 21, 2009) (predominance satisfied with
    respect to claim that defendant improperly failed to compensate employees for work

22  performed prior to and after paid hours although amount of work performed by
    employees differed and certain functions could be considered *de minimis*); *Brewer v.*

23  *Salyer*, 2009 WL 1396148, at *10 (E.D. Cal. May 18, 2009) (predominance satisfied
    where defendant employer allegedly depressed wages by hiring illegal aliens to

24  perform labor although plaintiff performed just one of many jobs for which defendant
    allegedly employed illegal aliens and extent to which illicit hiring practices affected

25  wages paid to various job categories would require individual consideration);
    *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550, at *15 (N.D. Cal. Sep. 11,

26  2008) (common issues predominated where bank misled consumers by temporarily
    posting debits to online accounts upon authorization, reversing debits three days later

27  and then re-debiting accounts when charges cleared because the reversals could have
    led consumers to conclude that their accounts contained additional funds and to incur

28  overdraft charges despite defendant's contention that individual issues related to class
    members' reliance upon online balance information predominated).

1  fact-finder need only determine whether those brochures were capable of misleading a

2  reasonable consumer." *Id.* at *1, 5-6.

3       The same is true here, where the dispositive issue is whether the disclosures on

4  Brother Devices' displays, in the User's Guides and on Brother Products' packaging

5  were "likely to deceive" consumers. As the *Yokoyama* court concluded, that issue

6  presents overarching factual and legal questions common to all Class members.

### 3.    A Class Action Provides The Superior Means For Resolving This Controversy

8       Rule 23(b)(3) lists four factors "pertinent" to whether "a class action is superior

9  to other available methods for the fair and efficient adjudication of the controversy":

11       the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action.

14       Each of those factors supports a ruling that this action offers the most efficient

15  manner to resolve Class members' claims. First, because of the enormous cost of

16  prosecuting this action, Class members cannot afford to pursue claims individually.[40]

17       Second, although one other class action is pending against Brother-US in New

18  Jersey, this case had advanced well beyond that litigation. A motion to dismiss is still

19  pending in New Jersey. Kalcheim Decl. at ¶¶ 49-52. Furthermore, the New Jersey

20  court does not appear to have entered a scheduling order, and the parties have

21  conducted no discovery. *Id.* at ¶¶ 50-51. In any event, the New Jersey case does not

22  involve any claims against Brother-Japan or the California statutory claims that

23  Plaintiffs assert. *Id.* at ¶ 52. Defendants have also consistently argued that this action

24  should be resolved before the New Jersey litigation. *Id.* at ¶ 53. Thus, "the extent and

---

[40] *See, e.g., Baghdasarian,* 258 F.R.D. at 390 ("conducting this case as a class action will be the most efficient way to resolve the claims of all class members, especially since the individual claims are small and economically unfeasible to litigate individually"); *Andrews Farms v. Calcot, Ltd.,* ___ F.R.D. ___, 2009 WL 2423701, at *15 (E.D. Cal. Aug. 5, 2009) ("[b]ringing individual claims for small amounts of money would be inefficient and would discourage potential plaintiffs from seeking redress for their claims").

23

1  nature of any litigation concerning the controversy already commenced by or against

2  members of the class" fully supports a finding of superiority.[41]

3          Third, because Plaintiffs assert claims on behalf of a Class consisting of

4  California residents and purchasers of merchandise from California businesses

5  (Compl. at ¶¶ 2, 15), this venue presents a desirable location for resolving Class

6  members' claims.  *See, e.g., Baghdasarian*, 258 F.R.D. at 390.  Finally, the Court can

7  easily manage this litigation through the use of techniques that federal courts have

8  employed to adjudicate similar consumer class actions.  Thus, the class action device

9  provides the superior method for expeditiously resolving this controversy.[42]

10  **III.   THE COURT SHOULD APPOINT PLAINTIFFS' COUNSEL AS CLASS COUNSEL**

11          Rule 23(g) states that, "[u]nless a statute provides otherwise, a court that

12  certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1)(A); *accord, e.g.,*

13  *Tchoboian*, 2009 WL 2169883, at *6.  In appointing class counsel, the Court "must

14  consider: (i) the work counsel has done in identifying or investigating potential claims

15  in the action; (ii) counsel's experience in handling class actions, other complex

16  litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of

17

18          [41]  *See, e.g., Cruz*, 2009 WL 1458032, at *11 (refusing to "deny certification
based on the fact that one other case [was] pending" in a California state court
19  asserting some of the same claims as the federal action); *In re Wal-Mart Stores, Inc.*
*Wage and Hour Litig.*, 2008 WL 413749, at *14 (N.D. Cal. Feb. 13, 2008) (rejecting
20  argument that pendency of a similar litigation and an administrative agency settlement
regarding the issues involved in the federal litigation defeated a finding of
21  superiority); *Bristow*, 2007 WL 1752602, at *7 (superiority satisfied "although there
is a case pending in Illinois state court that seeks to represent California aircraft
22  owners" where the California action was "at a more advanced stage").

23          [42]  *E.g., Hunt*, 241 F.R.D. at 514-15 (superiority satisfied where "individual
consumers are most likely unaware of" the claims the plaintiffs were pursuing, the
24  federal statute that formed the basis for the action "contemplated class action
recovery" (as do the UCL, FAL and CLRA), "the size of any individual damages
25  claims . . . are usually so small that there is little incentive to sue individually" and
"efficiency and consistency of concerns favor litigating the legality of Defendant's
26  standardized conduct by all class members in one suit"); *Ballard*, 186 F.R.D. at 600
(superiority satisfied where "individual consumers are most likely unaware of their
27  rights under the FDCPA," "size of any individual damages claims under the FDCPA
are usually so small that there is little incentive to sue individually" and "efficiency
28  and consistency of concerns favor litigating the legality of [defendant's] standardized
conduct by all class members in one suit").

24

1    the applicable law; and (iv) resources counsel will commit to representing the class."

2    Fed. R. Civ. P. 23(g)(1)(A) (paragraph breaks omitted).  Rule 23(g)(1)(B) also permits

3    the Court to consider "any other matter pertinent to counsel's ability to fairly and

4    adequately represent the interests of the class."

5         As Plaintiffs demonstrated in discussing Rule 23(a)'s adequacy requirement,

6    their counsel possess substantial experience prosecuting class actions (including cases

7    involving UCL, FAL and CLRA claims) and in litigating complex commercial

8    disputes. *See* Point II.A.4.; Kalcheim Decl. at ¶¶ 54-56 and Exs. 34-35; Bonner Decl.

9    at ¶¶ 3-8 and Ex. A.  Counsel have also devoted significant resources to prosecuting

10   the Class's claims and have built a robust record regarding Defendants' misconduct.

11   Kalcheim Decl. at ¶¶ 2-15.  Accordingly, the Court should appoint Plaintiffs' counsel

12   as class counsel. *See, e.g., Cruz*, 2009 WL 1458032, at *11 (approval of class counsel

13   was supported by the fact that a "considerable amount of discovery has taken place in

14   this case including depositions and document review").

15                              **CONCLUSION**

16        For the reasons stated herein, the Court should (a) certify this action as a class

17   action pursuant to Fed. R. Civ. P. 23(b)(2) and/or 23(b)(3); (b) certify Plaintiffs as the

18   representatives of the Class; and (c) certify Plaintiffs' counsel as class counsel.

19   Dated: October 9, 2009              **KALCHEIM LAW GROUP, P.C.**

20                                       By:   /s/ Mitch Kalcheim

21                                              Mitch Kalcheim (SBN 175846)

22                                       *Counsel for Plaintiffs*

23   **OF COUNSEL:**

24   **SHALOV STONE BONNER & ROCCO LLP**
     James P. Bonner
25   Patrick L. Rocco
     485 Seventh Avenue, Suite 1000
26   New York, New York 10018
     (212) 239-4340
27   (212) 239-4310

28

                                        25

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on October 13, 2009, I electronically filed the forgoing

3   with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I

5   hereby certify that I have mailed the document(s) or paper via the United States Postal

6   Service to the non-CM/ECF participants indicated on the Manual Notice list.

7      I certify under penalty of perjury of the laws of the United States of America

8   that the foregoing is true and correct. Executed on October 13, 2009 at Beverly Hills,

9   California.

10

11

12                                    Mitch Kalcheim
                                      Attorney for Plaintiffs
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

NOTICE OF CHANGE OF ADDRESS

C:\Documents And Settings\Tujarich_F\Desktop\Brother - Certificate Of Service Nic Manual Filing Doc